UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

PIG NEWTON, INC.,

           Plaintiff,

-against-

THE BOARDS OF DIRECTORS OF THE
MOTION PICTURE INDUSTRY PENSION
PLAN, THE MOTION PICTURE
INDUSTRY INDIVIDUAL ACCOUNT
PLAN, AND THE MOTION PICTURE
INDUSTRY HEALTH PLAN,

           Defendants.

Case No. 13-CIV-7312 (KPF)

**ANSWER, AFFIRMATIVE DEFENSES, AND COUNTERCLAIM**

Defendants Boards of Directors of the Motion Picture Industry Pension Plan, the Motion Picture Industry Individual Account Plan, and the Motion Picture Industry Health Plan, ("Defendants" or "Boards of Directors") by their attorneys Spivak Lipton LLP answer the Complaint of Plaintiff Pig Newton, Inc. ("Plaintiff" or "Pig Newton"), as follows:

    1.    Admit upon information and belief the allegations set forth in paragraph 1.

    2.    Admit upon information and belief the allegations set forth in paragraph 2.

    3.    Admit upon information and belief the allegations set forth in paragraph 3.

    4.    Admit upon information and belief the allegations set forth in paragraph 4, except deny knowledge or information as to when Mr. Szekely added editorial services to his duties.

    5.    Admit upon information and belief the allegations set forth in paragraph 5.

    6.    Admit the allegations set forth in paragraph 6.

7. Admit that in March 2013 the Plans conducted an audit for the period of January 30, 2011 through November 20, 2012, and assessed Pig Newton with contributions owing on behalf of Mr. Szekely in connection with his employment as editor of the Series for 2,640 hours for the period from July 24, 2011, through November 10, 2012, for a principal sum of $27,935.16, plus attendant interest, liquidated damages, and audit costs, and otherwise deny the allegations set forth in paragraph 7.

8. Admit that Defendants seek additional monies from Plaintiff, and otherwise deny the allegations set forth in paragraph 8.

9. Respectfully refer the Court to the documents referenced in paragraph 9 for a complete and accurate statement of their contents.

10. Deny the allegations set forth in paragraph 10.

11. With regard to the allegations set forth in paragraph 11, admit that the Plans' auditors determined that Pig Newton had made all required contributions to the Plans for all hours worked or guaranteed by all other employees of Pig Newton, deny that they made such determination with regard to Mr. Szekely, respectfully refer the Court to the Trust Agreements for the content of the "Controlling Employee Rules," and otherwise deny the allegations set forth in paragraph 11.

12. Deny that liability continues to accrue indefinitely, and otherwise admit the allegations set forth in paragraph 12.

13. Admit the allegations set forth in paragraph 13.

14. Admit the allegations set forth in paragraph 14.

15. Deny knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 15.

16. Deny the allegations set forth in paragraph 16, except to admit that Plaintiff brings a complaint for declaratory and other relief.

17. No response is necessary to paragraph 17, as it sets forth Plaintiff's statement of the relief sought.

18. With regard to the allegations set forth in paragraph 18, admit there is subject matter jurisdiction over the instant dispute pursuant to 28 U.S.C. § 1331, and otherwise respectfully refer all questions of law to the Court.

19. Admit the allegations set forth in paragraph 19.

20. Admit upon information and belief the allegations set forth in paragraph 20.

21. Admit the allegations set forth in paragraph 21.

22. Admit the allegations set forth in paragraph 22.

23. Admit the allegations set forth in paragraph 23.

24. Admit the allegations set forth in paragraph 24.

25. Admit the allegations set forth in paragraph 25.

26. Admit the allegations set forth in paragraph 26.

27. Admit the allegations set forth in paragraph 27.

28. Admit the allegations set forth in paragraph 28, and respectfully refer the Court to the documents referenced in paragraph 28 for a complete and accurate statement of their contents.

29. Deny information sufficient to form a belief as to the truth of the allegation that the last covered work in connection with the last episode of season two was performed on September 9, 2011, admit that Exhibit 1 is a true copy of the Low Budge Episodic Cable Agreement for season two of the Series, respectfully refer the Court to the document

referenced in paragraph 29 for a complete and accurate statement of its contents, and otherwise deny the allegations set forth in paragraph 29.

30. Respectfully refer the Court to the document referenced in paragraph 30 for a complete and accurate statement of its contents.

31. Respectfully refer the Court to the document referenced in paragraph 31 for a complete and accurate statement of its contents.

32. Respectfully refer the Court to the document referenced in paragraph 32 for a complete and accurate statement of its contents.

33. Deny the allegations set forth in paragraph 33, and respectfully refer the Court to the document referenced in paragraph 33 and documents incorporated therein by reference for a complete and accurate statement of their contents.

34. Respectfully refer the Court to the document referenced in paragraph 34 for a complete and accurate statement of its contents.

35. Admit the allegations set forth in paragraph 35, and respectfully refer the Court to the document referenced in paragraph 35 for a complete and accurate statement of its contents.

36. Admit the allegations set forth in paragraph 36.

37. Admit that no contributions had been made to the Plans for the above-stated period, deny knowledge or information sufficient to form a belief as to the truth of the reasons that no contributions had been made for such period, respectfully refer the Court to the document referenced in paragraph 37 for a complete and accurate statement of its contents, and otherwise deny the allegations set forth in paragraph 37.

38. Admit that the Trust Agreements contain provisions relating to Controlling Employees, and respectfully refer the Court to the documents referenced in paragraph 38 for a complete and accurate statement of their contents.

39. Respectfully refer the Court to the document referenced in paragraph 39 for a complete and accurate statement of its contents.

40. Admit the existence of emails dated April 25, 2012 and July 23, 2012 from Ruben Ramirez to Sanford Miller, respectfully refer the Court to such emails for their contents, and otherwise deny the allegations set forth in paragraph 40.

41. Admit that it was determined that Mr. Szekely fell under category Section 4(a)(l) above, and assessed Plaintiff for 40 hours of contributions for 50 weeks per year, respectfully refer the Court to the document referenced in paragraph 41 for a complete and accurate statement of its contents, and otherwise deny the allegations set forth in paragraph 41.

42. Admit the existence of a letter dated August 7, 2012 from W. Cole to W. Zuckerman, respectfully refer the Court to the document referenced in paragraph 42 for a complete and accurate statement of its contents, and otherwise deny the allegations set forth in paragraph 42.

43. Admit the allegations set forth in paragraph 43, and respectfully refer the Court to the document referenced in paragraph 43 for a complete and accurate statement of its contents.

44. Respectfully refer the Court to the document referenced in paragraph 44 for a complete and accurate statement of its contents.

45. Respectfully refer the Court to the document referenced in paragraph 45 for a

complete and accurate statement of its contents.

46. Respectfully refer the Court to the Low Budget Episodic Cable Agreement referenced in paragraph 46 for a complete and accurate statement of its contents, admit that the Plans assessed Pig Newton for unpaid contributions to the Plans on Mr. Szekely's behalf for 66 weeks during the Audit Period based on the Controlling Employee Rules, and otherwise deny the allegations set forth in paragraph 46.

47. With regard to the allegations set forth in paragraph 47, admit that the Plans' counsel sent Plaintiff's counsel a letter dated August 28, 2013, and respectfully refer the Court to that document for a complete and accurate statement of its contents.

48. Admit the allegations set forth in paragraph 48.

49. Admit the allegations set forth in paragraph 49, and respectfully refer the Court to the document referenced in paragraph 49 for a complete and accurate statement of its contents.

50. Admit the allegations set forth in paragraph 50, and respectfully refer the Court to the document referenced in paragraph 50 for a complete and accurate statement of its contents.

51. Deny the allegations set forth in paragraph 51.

52. Deny the allegations set forth in paragraph 52.

53. Deny the allegations set forth in paragraph 53, and respectfully refer the Court to the document referenced in paragraph 53 for a complete and accurate statement of its contents.

54. Deny the allegations set forth in paragraph 54, and respectfully refer the Court to the document referenced in paragraph 54 for a complete and accurate statement of its contents.

55. Deny the allegations set forth in paragraph 55.

56. Deny the allegations set forth in paragraph 56.

57. Respectfully refer the Court to the Controlling Employee Rules set forth in the Plans' Trust Agreements, and otherwise deny the allegations set forth in paragraph 57.

58. Respectfully refer the Court to the provisions concerning Controlling Employee set forth in the Plans' Trust Agreements, and otherwise deny the allegations set forth in paragraph 58.

59. Deny the allegations set forth in paragraph 59.

60. Deny the allegations set forth in paragraph 60.

61. Deny the allegations set forth in paragraph 61.

62. Admit that the Circuit Court for the Second Circuit Court of Appeals rendered a decision in La Barbera v. J.D. Collyer Equipment Corp., 337 F.3d 132 (2d Cir. 2003), respectfully refer the Court to that decision for its contents, and otherwise deny the allegations set forth in paragraph 62.

63. Deny the allegations set forth in paragraph 63.

### FIRST AFFIRMATIVE DEFENSE

64. Plaintiff's Complaint fails to state a claim upon which relief can be granted.

### SECOND AFFIRMATIVE DEFENSE

65. Plaintiff has unclean hands.

### THIRD AFFIRMATIVE DEFENSE

66. The allegations of the Complaint are barred by the doctrine of waiver.

## FOURTH AFFIRMATIVE DEFENSE

67. The allegations of the Complaint are barred by the doctrine of estoppel.

## FIFTH AFFIRMATIVE DEFENSE

68. Plaintiff lacks standing to sue under 29 U.S.C. §§ 186, 1132, and 1145.

## SIXTH AFFIRMATIVE DEFENSE

69. Plaintiff has failed to make contributions in accordance with the controlling Trust Agreements and Plan documents.

## SEVENTH AFFIRMATIVE DEFENSE

70. The Defendants seek to enforce duly-enacted terms of the controlling Trust Agreements to which Plaintiff agreed to be bound.

WHEREFORE, Defendants pray as follows:

1. That the Court dismiss Plaintiff's Complaint in its entirety with prejudice and enter judgment in favor of Defendants on all claims;

2. That the Court award costs of suit to Defendants, including reasonable attorneys' fees in accordance with ERISA; and

3. For such other and further relief as the Court deems just and proper.

## COUNTERCLAIM
## OF THE BOARDS OF DIRECTORS OF THE MOTION PICTURE INDUSTRY PENSION PLAN, THE MOTION PICTURE INDUSTRY INDIVIDUAL ACCOUNT PLAN, AND THE MOTION PICTURE INDUSTRY HEALTH PLAN

Defendants Boards of Directors of the Motion Picture Industry Pension Plan, the Motion Picture Industry Individual Account Plan, and the Motion Picture Industry Health Plan ("Defendants" or "Boards of Directors") by their attorneys, Spivak Lipton LLP, bring this counterclaim against Plaintiff Pig Newton, Inc. ("Plaintiff" or "Pig Newton"), and respectfully allege as follows:

### JURISDICTION AND VENUE

1.     The Court has jurisdiction of this counterclaim pursuant to Sections 502(a)(3), 502(e)(1), and 502(f) of the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. §§ 1132(a)(3), 1132(e)(1), and 1132(f).

2.     Venue lies in the Southern District of New York pursuant to ERISA § 502, 29 U.S.C. § 1132(e)(2).

### PARTIES

3.     At all relevant times, Defendants have administered and now administer the Motion Picture Industry Pension Plan ("Pension Plan"), an "employee pension benefit plan" as defined in Section 3(2) of ERISA, 29 U.S.C. § 1002(2); the Motion Picture Industry Individual Account Plan (the "Individual Plan"), an "employee pension benefit plan" as defined in Section 3(2) of ERISA, 29 U.S.C. § 1002(2); and, the Motion Picture Industry Health Plan ("Health Plan"), an "employee welfare benefit plan" as defined in Section 3(1) of ERISA, 29 U.S.C. § 1002(1) (collectively the "Plans.")

4. The Boards of Directors of the Pension Plan, the Individual Plan, and the Health Plan are each the duly selected governing bodies of their respective jointly administered labor-management trust Plans that were created and are maintained pursuant to Section 302(c)(5) of the Labor Management Relations Act ("LMRA"), 29 U.S.C § 186(c)(5), as amended. The Plans are principally administered at 11365 Ventura Boulevard, Studio City, CA 91604-3148.

5. At all relevant times, Defendants have been fiduciaries who administer the assets of the Plans. The Plans are employee benefit plans within the meaning of ERISA § 3(3), 29 U.S.C. § 1002(3). Pursuant to ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), the Boards of Directors are authorized to enforce the provisions of Title I of ERISA by, among other things, the filing and prosecution of civil claims against fiduciaries and others who violate ERISA.

6. At all relevant times, Plaintiff is and has been engaged in the television production business, an industry affecting commerce within the meaning of Sections 3(5), 3(11), 3(12), and 4(a)(1) of ERISA, 29 U.S.C. §§ 1002(5), 1002(11), 1002(12), and 1003(a)(1), and of Sections 2(2), 2(6), and 2(7) of the LMRA, 29 U.S.C. §§ 152(2), 152(6), and 152(7). Upon information and belief, Plaintiff's principal place of business is c/o Citrin Cooperman & Company, L.L.P., 529 Fifth Avenue, New York, NY 10017.

7. Plaintiff is the producer of a television series entitled "Louie" (the "Series"). Upon information and belief, the Series has been exhibited on the basic cable network F/X since its inception in or around 2010.

8. Upon information and belief, at all relevant times, Louis Szekely has been and is the sole owner and shareholder of Plaintiff. Upon information and belief, Mr. Szekely is the creator of the Series, and has served as its producer, sole writer, sole director, and star performer. Upon further information and belief, at some point no later than the second season

of the Series, Mr. Szekely included editorial services among his many duties.  Plaintiff employs Mr. Szekely in connection with each of these various functions for the Series.

9. Upon information and belief, Plaintiff employs other employees in addition to Mr. Szekely who perform services in connection with the Series, including other actors and the production crew.  Among Plaintiff's other employees are employees who perform editing services.

## FACTS

10. At all relevant times, Plaintiff and the International Alliance of Theatrical Stage Employees, Moving Picture Technicians and Allied Crafts of the United States, its Territories and Canada, AFL-CIO, CLC ("IATSE") and the East Coast Locals of IATSE have been parties to various collective bargaining agreements (collectively, "IATSE CBAs") governing the wages, hours, and working conditions of certain of Plaintiff's employees.

11. Among the agreements entered into between Plaintiff and the IATSE are agreements entitled "Agreement of Consent- Limited Production Agreement for Project Titled 'Louie'" ("Agreement of Consent").  Pursuant to the Agreements of Consent, Plaintiff "agree[d] to become a party to and be bound by," among others, (1) the Producer-IATSE Basic Agreement between the Alliance of Motion Picture and Television Producers, Inc. (the "AMPTP") and IATSE and its West Coast Studio Locals; (2) the Videotape Electronics Supplemental Basic Agreement and the Supplemental Digital Production Agreement between the IATSE and the AMPTP; and, (3) the Trust Agreements of the Plans, and amendments, modifications, extensions, supplements, or renewals of the agreements specified therein.

12. The IATSE CBAs obligate Plaintiff to make timely contributions to the Plans for its employees covered by the IATSE CBAs.

13. Pursuant to the IATSE CBAs, Plaintiff agreed to and did execute Trust Acceptances, by which, among other things, Plaintiff agreed to be become a party and participate in the Plans to the same extent as though Plaintiff had executed the Plans' Trust Agreements or their counterparts with respect to the employees covered by the collective bargaining agreement.

14. At all relevant times, Plaintiff and Local 399 of the International Brotherhood of Teamsters have been party to a collective bargaining agreement ("Teamsters CBA") governing the wages, hours, and working conditions of certain of Plaintiff's employees. The Teamsters CBA obligates Plaintiff to make timely contributions to the Plans for its employees covered by the Agreement.

15. Editing work is covered by the IATSE CBAs.

16. The Plans' Trust Agreements to which Plaintiff agreed to be bound contain provisions pertaining to "Controlling Employees." The Health Plan's Trust Agreement establishing the Plan defines "Controlling Employees" as follows:

> A qualified Controlling Employee of an Employer shall mean an Employee ... who is also a shareholder of the corporation or member of the LLC or is an officer of such Employer or is the spouse of such a shareholder, member of the LLC or officer, and whose Employer employs at least one other employee performing work covered under the applicable collective bargaining agreement in addition to the Controlling Employee. . . .

There are non-substantive variations in the language of the Pension Plan and the Individual Plan.

17. The Trust Agreements detail the contribution obligation of Controlling Employers for Controlling Employees. The Health Plan's Trust Agreement provides:

> Contributions by Employers which are privately held corporations, limited liability companies ("LLC"), or other eligible business entities, on behalf of any Controlling Employee shall be made at the composite rates set forth in Article II, Section I, Paragraph B, above, as set forth below. A Controlling Employee of an Employer, as described in the previous sentence, shall mean an Employee ... which Employee is also a shareholder of the corporation or member of the LLC, or is an officer of the Employer or the spouse of such a shareholder, member of the LLC . . . and is not the only Employee of the Employer who works under an applicable collective bargaining agreement. The Employer of such Controlling Employee shall be called a Controlled Employer.

There are non-substantive variations in the language of the Pension Plan and the Individual Plan.

The Heath Plan's Trust Agreement further states:

> Contributions shall be made for such Controlling Employee for fifty-six (56) hours per week, and for not less than forty-eight (48) weeks in any calendar year, regardless of the number of weeks in which the Employee performs any work.
>
> However, for Controlling Employees working under the following Collective Bargaining Agreements at the times specified below, contributions shall be made for such Employee for forty (40) hours per week and for not less than fifty (50) weeks in any calendar year, regardless of the number of weeks in which the Employee performs any work:
>
> . . .
> (iii)   Effective March 25, 2004, Controlling Employees working under Collective Bargaining Agreements described in Article II, Section I.B.3 (East Coast agreements).

There are non-substantive variations in the language of the Pension Plan and the Individual Plan.

18. Pursuant to the Trust Agreements to which Plaintiff agreed to be bound, at all relevant times Plaintiff was and is a Controlled Employer and Louis Szekely was and is a Controlling Employee.

19. Plaintiff reported hours and made contributions to the Plans on behalf of Mr. Szekely at the rate of 50 hours per week for the period on or about April 17, 2011 through on or about July 16, 2011.

20. By letter dated March 13, 2012, the Plans notified Plaintiff that contributions were due to the Plans on behalf of Controlling Employee Louis Szekely. The Plans notified Plaintiff that the contributions were due immediately and would become delinquent ten business days from the date of the bill, and, once delinquent, contributions would be subject to interest and liquidated damages as set forth in the Plans' Trust Agreements.

21. Pursuant to the terms of the Plans' Trust Agreements, the Plans have the authority to conduct audits of the books and records of signatory employers for the purpose of determining the accuracy of reporting and contributions made to the Plans. The Trust Agreements provide that if such an audit discloses a delinquency, underpayment, or other erroneous reporting, the cost of the audit shall be borne by the Employer.

22. Pursuant to the Plans' Trust Agreements, after due notice to Plaintiff, the Audit & Collections Department of the Plans completed an audit of Plaintiff's records relating to contributions made to the Plans for the period January 30, 2011 to November 12, 2012 (the "audit period"). The resulting Audit Report, which was forwarded to Plaintiff on or about March 15, 2013, indicated that Plaintiff failed to accurately report the hours and/or dollars upon which contributions were due during the audited period, and failed to pay the contributions due thereon. The audit disclosed a failure to report the contribution requirements for Controlling

Employee Louis Szekely for the period July 24, 2011 to November 10, 2012, and a total of 66 weeks were assessed to Plaintiff.

23.   Pursuant to the audit, Plaintiff was advised that the following amounts were due to Plans for the period January 30, 2011 to November 12, 2012: Contributions in the amount of $27,935.16; Interest in the amount of $3,004.14; Liquidated Damages in the amount of $5,587.23; and, the Audit Cost in the amount of $2,070.00. The audit found a Grand Total Due of $38,596.53 for the period January 30, 2011 to November 12, 2012.

24.   To date, Plaintiff has failed to pay the amounts demanded by the Plans pursuant to the audit.

25.   After the audit, Plaintiff was advised that additional amounts were due to the Plans on behalf of Controlling Employee Louis Szekely, and demand was made for such contributions. In or around August 2013, Plaintiff was advised that an additional $15,053.84 had accrued and was owing under the Controlling Employee provisions for the period from November 11, 2012 through July 20, 2013, along with liquidated damages and interest. Plaintiff was further advised that additional amounts continued to accrue.

26.   For the period on or about January 30, 2011 through the present, despite repeated demands for payment, Plaintiff has failed and refused to make all required contributions to the Plans.

27.   Upon information and belief, the amount due and owing by Plaintiff for the period from January 30, 2011 to the present is estimated to be at least $55,514.92 in contributions, plus interest, liquidated damages, and $2,070.00 in audit costs.

28.   Defendants have asked Plaintiff to perform its obligations, but Plaintiff has refused and failed to so perform.

29. Plaintiff willfully breached its obligations in withholding and diverting contributions due and owing to the Plans. By the conduct and omissions described above, Plaintiff has failed to discharge its duties with respect to the Plans.

30. Pursuant to 29 U.S.C. § 1132(g)(2) and the Trust Agreements, Plaintiff owes the Plans interest at the rate of one percent (1%) per month on all unpaid contributions from the dates the sums were originally due to the Plans to the date of judgment.

31. Pursuant to the 29 U.S.C. § 1132(g)(2) and the Trust Agreements, Plaintiff agreed that in the event it failed to pay contributions to the Plans when due, it would be considered delinquent with the Plans and would pay the Plans the sum of twenty percent (20%) of the total amount then due, or the interest due, whichever is greater, as liquidated damages for each delinquency. Liquidated damages are due to the Plans by Plaintiff in an amount to be determined.

## FIRST COUNTERCLAIM FOR RELIEF

(Violation of ERISA Section 515, 29 U.S.C. § 1145)

32. Paragraphs 1 through 31 are incorporated by reference as if fully set forth herein.

33. By reason of the foregoing, Plaintiff is liable to Defendants for the following approximate amounts pursuant to Section 515 of ERISA, 29 U.S.C. § 1145:

    (a) All unpaid contributions for the period January 2011 to the present in the amount of $55,514.92, and all additional unpaid contributions as of the date of judgment pursuant to 29 U.S.C. § 1132(g)(2)(A);

    (b)    Interest on all unpaid contributions at the rate of 1% per month from January 2011 to the present, with all additional unpaid interest as of the date of judgment pursuant to 29 U.S.C. § 1132(g)(2)(B);

    (c)    Liquidated damages, in the amount of interest on the unpaid contributions or 20 percent of all unpaid contributions, whichever is greater, pursuant to 29 U.S.C. § 1132(g)(2)(C); and

    (d)    Reasonable attorneys' fees and the costs of the action pursuant to 29 U.S.C. § 1132(g)(2)(D).

## RELIEF REQUESTED

WHEREFORE, Defendants respectfully request entry of a judgment against Plaintiff and in favor of Defendants:

    (a)    For unpaid contributions to the Plans in the amount of at least $55,514.92;

    (b)    For interest on those amounts;

    (c)    For liquidated damages;

    (d)    For audit costs of $2,070.00;

    (e)    For Defendants' costs and reasonable attorneys' fees incurred in prosecuting this action;

    (e)    For any additional contributions due and owing at the time judgment is entered, together with applicable interest, liquidated damages, and costs and fees; and

    (f)    For such other and further relief as the Court deems just, equitable, and proper.

Dated:    New York, New York
February 7, 2014

SPIVAK LIPTON LLP
1700 Broadway, 21st Floor
New York, New York 10019
Tel: (212) 765-2100
Fax: (212) 541-5429
Email: gcostello@spivaklipton.com
        fmoss@spivaklipton.com

Attorneys for Defendants

By: _____
Gillian Costello (GC 0151)
Franklin K. Moss (FM 9161)