

**SPIVAK LIPTON** LLP

ATTORNEYS AT LAW

Gillian Costello
gcostello@spivaklipton.com

1700 Broadway
New York, NY 10019
T 212.765.2100
F 212.765.8954
spivaklipton.com



May 12, 2014

**VIA ECF**
The Honorable Katherine Polk Failla
United States District Court
Southern District of New York
40 Foley Square, Room 2103
New York, New York 10007

      **Re:**    *Pig Newton, Inc. v. The Board of Directors of the Motion Picture Industry Pension Plan, et al.,* **Case No.: 13 Civ 7312 (KPF)**

Dear Judge Failla:

      This firm represents the Defendants Boards of Directors of the Motion Picture Industry Pension, Individual Account, and Health Plans (collectively, "Defendants" or the "Plans") in the above-referenced matter. We write pursuant to Your Honor's Order dated January 9, 2014, in which Your Honor set forth a schedule for the submission of letters relating to the parties' motions for summary judgment. The basis for Defendants' summary judgment motion pursuant to Federal Rule 56 is set forth below.

### THE COMPLAINT AND COUNTERCLAIM

      Plaintiff Pig Newton, Inc. ("Plaintiff" or "Pig Newton") has sued the Boards of Directors of the Plans for declaratory and injunctive relief. Specifically, Pig Newton, which is indisputably obligated to make contributions to the Plans on behalf of its employees for work performed in covered employment, seeks a declaration that the Plans' "Controlling Employee Rules are invalid and unenforceable" (Compl., WHEREFORE clause, ¶ 1); an injunction prohibiting the Plans from "seeking to enforce the Controlling Employee Rules against Plaintiff" (id. ¶ 2); a declaration that Plaintiff does not owe money to the Plans "based on the application of the Controlling Employee Rules" (id. ¶ 3); and costs and attorneys' fees (id. ¶ 4).

      Defendants have counterclaimed under ERISA Section 515, 29 U.S.C. § 1145, seeking a judgment for all unpaid contributions owed to the Plans, along with interest, liquidated damages, attorneys' fees and costs, and costs associated with conducting an audit of Plaintiff's books and records. (See Counterclaim, WHEREFORE clause, ¶¶ (a)-(g).)

**SPIVAKLIPTON**LLP
ATTORNEYS AT LAW

Honorable Katherine Polk Failla
May 12, 2014
Page 2 of 3

### BACKGROUND FACTS

The material facts are undisputed. Pig Newton is the producer of the television series "Louie" (the "Series"). (Compl. ¶ 2.) Louis Szekely ("Szekely") is Pig Newton's sole owner and shareholder. (Id. ¶ 3.) Plaintiff employs Mr. Szekely in connection with various functions, including as the producer, sole writer, sole director, star performer, and as an editor of the Series. (Id. ¶ 4.) At some point in the first season of the Series, Mr. Szekely included editorial services among his many duties. (Counterclaim ¶ 8.)

At all relevant times, Plaintiff has been party to collective bargaining agreements ("CBA") pursuant to which Plaintiff agreed to and did execute Trust Acceptances. Under the Trust Acceptances, Plaintiff agreed to become a party and participate in the Plans to the same extent as though Plaintiff had executed the Plans' Trust Agreements or their counterparts with respect to the employees covered by the CBAs. (Id. ¶ 13.)

### THE TRUST AGREEMENTS' CONTROLLING EMPLOYEE PROVISIONS

The Plans' Trust Agreements to which Plaintiff agreed to be bound contain provisions pertaining to "Controlling Employees." "Controlling Employees" are defined as including shareholders or officers of Employers who perform covered bargaining unit work. (See Comp. ¶ 38.) As a sole shareholder who performs bargaining unit work, Mr. Szekely is a Controlling Employee within the meaning of the Plans' Trust Agreements.

Pursuant to the Trust Agreements, Plaintiff is deemed a "Controlled Employer" which is required to make contributions to the Plans on behalf of Mr. Szekely (as its Controlling Employee) "for forty (40) hours per week and for not less than fifty (50) weeks in any calendar year, regardless of the number of weeks in which the Employee performs any work." (Compl. ¶ 39; Counterclaim ¶ 17.)

### PLAINTIFF FAILED TO MAKE CONTRIBUTIONS IN ACCORDANCE WITH THE CBAS AND THE PLANS' TRUST AGREEMENTS

Pursuant to Section 515 of the Employee Retirement Income Security Act ("ERISA"):

> Every employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement.

29 U.S.C. § 1145.

Plaintiff did not make contributions to these multi-employer Plans on behalf of Mr. Szekely in accordance with the CBAs and the Trust Agreements, despite repeated requests from

SPIVAKLIPTON LLP
ATTORNEYS AT LAW

the Plans for such payment.[1]  Instead, purporting to rely on the Second Circuit's decision in La Barbera v. J.D. Collyer Equipment Corp., 337 F.3d 132 (2d Cir. 2003), Plaintiff commenced the instant action seeking to invalidate the Controlling Employee provisions.

However, the La Barbera case, upon which Plaintiff relies, is unavailing.  In La Barbera, the trustees adopted a resolution (the "100% owner rule") requiring sole owners to make contributions on behalf of themselves and their families at the rate of 40 hours per week, in response to the trustees' determination that certain 100%-owners were misreporting hours in order to qualify for health benefits.  Id. at 135.  The Court invalidated the rule, stating, "[w]e of course say no more than that the 100% owner rule as formulated is invalid because it is not expressly or impliedly authorized by either ERISA, the collective bargaining agreements, or the Trust Agreement."  337 F.3d at 139 (emphasis added).  Here, by contrast, the Controlling Employee provisions are not a rule instituted pursuant to the trustees' rulemaking authority.  Rather, they are expressly contained within the Trust Agreements themselves.  Thus, in La Barbera, the plan sought a remedy not authorized "under the terms of the plan or under the terms of a collectively bargained agreement," as required by Section 515 of ERISA.  Here, the Plan documents—the Trust Agreements—were expressly accepted by Plaintiff in documents that the CBA required Plaintiff to execute, satisfying both prongs of Section 515.

In sum, there is no genuine dispute as to any material fact and Defendants are entitled to judgment as a matter of law.  Defendants seek contributions that are owed to the Plans pursuant to the terms of the controlling Trust Agreements.

Respectfully submitted,

*Franklin K. Moss* (signature)

Gillian Costello
Franklin K. Moss

cc (via ECF):   William E. Zuckerman, Esq.
                Elizabeth O'Leary, Esq.

---

[1] Plaintiff failed to make contributions for Mr. Szekely at the rate of 40 hours per week for not less than 50 weeks in the calendar year in accordance with the Controlling Employee provisions of the Trust Agreements.  Rather, Plaintiff reported hours and made contributions to the Plans on behalf of Mr. Szekely at the rate of 50 hours per week for the period on or about April 17, 2011 through on or about July 16, 2011, and for the period on or about February 17, 2013 through on or about March 2, 2013.  (Counterclaim ¶ 20.)  For the period on or about March 9, 2014 through on or about March 22, 2014, Plaintiff reported hours and made contributions to the Plans on behalf of Mr. Szekely at the rate of 40 hours per week.  (Id.)  Mr. Szekely acknowledged during his deposition that these reported hours did not necessarily reflect the hours he actually worked, and that no records were kept as to the actual hours worked.  In addition, during Mr. Szekely's deposition, the Plans became aware that Mr. Szekely performed bargaining unit work in 2010.  However, Plaintiff failed to report any hours or make any contributions for the covered work performed by Mr. Szekely in 2010.  (See id. ¶ 19.)  Hence, contributions would be due for his work in 2010, even if Plaintiff's theory of the case were viable.