# Exhibit H

JT. LEGAL SUBCOMMITTEE MEETING

(Local 600)

March 13, 2002

Table of Contents

A.   Local 600 Employee-Shareholder AICP Commercial Agreement Amendments...................1

B.   Adjournment ........................................................................................................4

Note:  This is Attorney-Client Privileged Information

## MOTION PICTURE INDUSTRY PENSION AND HEALTH PLANS

### Report of the Jt. Legal Subcommittee

March 13, 2002

A meeting of the Jt. Legal Subcommittee was held on Wednesday, March 13, 2002, at 8:45 a.m. in Conference Room #2 at the Alliance of Motion Picture & Television Producers. Those present were noted as follows:

| MEMBERS PRESENT | ABSENT |
|---|---|
| Helayne I. Antler | |
| Joseph A. Aredas, Co-Chair | |
| Bruce C. Doering | |
| Ronald G. Kutak | |
| Hank Lachmund, Co-Chair | |
| Michael P. Messina | |
| Scott E. Roth | |

**OTHERS PRESENT**
Margo L. Berger, Administrative Director
Brenda English, Administrative Assistant
Victoria L. Fins, Compliance Officer/Secretary of the Meeting
Leo Geffner, Esq.—Geffner & Bush
Carol Lombardini, Esq.—Alliance of Motion Picture & Television Producers
Matt Miller—President, Association of Independent Commercial Producers, Inc. (via telephone)
Carolisa Pomerantz—Administrative Assistant
Robert Sacks, Esq.—Kane, Kessler, P.C. (via telephone)
Michael A. Wisnev, Esq.—O'Melveny & Myers
Arlene Falk Withers, Administrative and Legal Officer
Thomas A. Zimmerman, Executive Administrative Director
Shanda Zuniga, Manager, Employer Contracts

A. <u>Local 600 Employee-Shareholder AICP Commercial Agreement Amendments</u>
*(See minutes of the meeting held January 31, 2002.)*

At the meeting held January 31, 2002, the Subcommittee met to discuss the *Letter of Understanding and Amendment to Article IX of the 2000 Commercial Productions Agreement*, and the *Amendment to Article 4 of the AICP/Local 600 Agreement Dated December 10, 1998.*

[Redacted]

Mr. Miller confirmed that the intent of the Agreement was to allow the D/DP a **one-time irrevocable opt-out election** of the Motion Picture Industry Pension & Health Plans with regard to "commercials" work, thereby establishing

**Note: This is Attorney-Client Privileged Information**

their choice to participate in the Directors Guild of America Producer Pension and Welfare Plans ("DGA Plans"). However, he was concerned that D/DPs who subsequently are no longer employee-shareholders of an Employer would continue to be prohibited from participation in the Plans because of their opt-out election.

Discussion ensued regarding the Subcommittee's concern for possible manipulation of the Plans' contribution policies, and the AICP's assurances that such contribution manipulation is unlikely.

[Redacted]

When asked if there were any other participating group which was allowed to opt-out of participation in the Plans, it was noted that producers working as directors fall into that category.

[Redacted]

**Active Increases:**
In the past, Active Participants have been granted percentage increases from time to time. Those increases are not granted to individuals on a Break in Service. Unless the Plan is amended, the situation could exist where a D/DP works for 20 years, then opts-out of these Plans but continues to work for the same Employer, then after another 20 years, applies for retirement. That individual would be granted any percentage increases afforded Active Participants during the second 20-year period, even though they had opted out of these Plans many years ago.

**Disability Pension:**
The same situation exists with regard to a D/DP applying for a Disability Pension.

Note: This is Attorney-Client Privileged Information

A management caucus was called.

Upon re-convening the meeting, Mr. Lachmund presented the following management proposal, subject to final drafting:

**Prospective Agreement in Principle:**
This proposal would apply prospectively only to non-West Coast Employers signatory to the 37 Western States/Local 600 AICP Agreement, and specifically, to Controlling Employees of those Employers who perform services as Director of Photography <u>and</u> Director ("D/DP"), wherein contributions are made on their behalf to the Directors Guild of America Producers Pension & Welfare Plans ("DGA Plans"). There are no rule changes for West Coast Employers signatory to the West Coast Local 600 / AICP Agreement, or to Controlling Employees who do not participate in the DGA Plan.
1. D/DP's will be granted a one-time opt-out of participation in the Motion Picture Industry Pension and Health Plans under the following conditions. If the D/DP does not opt-out in accordance with the Plan provisions they will be considered a Controlling Employee for Plan contribution/benefit participation purposes.
2. *Opting-out* means on a one-time basis, the D/DP exercises an option to terminate, or not commence as the case may be, participation in the Motion Picture Industry Pension & Health Plans for all work covered under Local 600 / AICP / IATSE Commercial contracts and performed for an Employer of which the D/DP is a Controlling Employee, whether such work is performed on the East Coast and/or West Coast,.
3. *Spousal/Dependent rule:* If a D/DP opts-out, the spouse and any dependents will also be deemed to have opted-out.
4. *Employment with other Employers*
   a. The opt-out provision applies to any Employer of which the D/DP is a Controlling Employee.
   b. If a D/DP has opted-out of the Plans and subsequently ceases to be a Controlling Employee of the Employer pursuant to the terms of the Plans, and continues to work for the Employer, the opt-out continues and the D/DP is barred from participation in these Plans for covered services performed for that Employer.
   c. If a D/DP opts-out and subsequently becomes an Controlling Employee of any other Employer, then the original opt-out election would continue to apply.
   d. If a D/DP has opted-out, the D/DP will participate in the Plans with regard to covered services as an Employee of any other Employer, provided s/he is not a D/DP of such Employer.
   e. If the D/DP will participate in the Plans for covered services performed for any other Employer of which s/he is NOT a Controlling Employee.
5. *Election Period:*
   a. *D/DPs of existing Employers* (upon the effective date yet to be determined) would have 60 days in which irrevocably opt-out of coverage by the Motion Picture Industry Pension & Health Plans (the "Plans")
   b. *D/DPs of new Employers* (upon the effective date yet to be determined) will have a 60-day window to irrevocably opt-out of coverage of these Plans. (The Plans must be in receipt of the Opt-out election(s) at the time the Jt. Legal Committee is considering a new company for Employer-Party status to the Plans.)
   c. *New D/DPs in existing Employers* will have 60 days in which to affirmatively opt-out, commencing the last day that contributions are due to the DGA Plan. Contributions are due to the DGA Plan by the end of the month following the month during which covered work is performed. For example, if Director work is performed on March 15, contributions are due to the DGA Plan by April 30. The new D/DP's one-time opt-out election would be due 60 days after April 30.
6. *The Pension Plan and opted-out individuals:* The Pension Plan would be amended to disallow opted-out individuals for Active Pension increases and for Disability Pensions

**Note:  This is Attorney-Client Privileged Information**

Administratively, the Plans would draft correspondence and a one-time irrevocable opt-out election form for Employee-Shareholders. In addition the Plans will coordinate with the Directors Guild Plans to determine those individuals entitled to choose this one-time opt-out election. In addition, the Plan Office will keep track of these individuals who have exercised their one-time irrevocable election to not participate in these Plans.

On the question of retroactive applicability, Mr. Lachmund emphasized that the above-stated proposal has prospective applicability only.

Mr. Miller stated that this might be a problem because there are approximately 280 production companies that were advised long ago of this provision to the collective bargaining agreement to which they are signatory. Prior to the Local 600 merger, D/DP's were reporting contributions on hours worked or guaranteed. Up to 1 year ago, because of the Agreement being put into place, many of the D/DP's ceased making contributions altogether because they thought if they made any contributions, even on hours worked or guaranteed, it would be recognized in an audit and they would be required to make contributions to these Plans at the rate of 56 hours per week, 48 weeks per year. Mr. Miller requested amnesty, via retroactivity, on behalf of the D/DPs in question.

Mr. Lachmund noted that the above-stated proposal is subject to approval by the Directors of the Motion Picture Industry Pension & Health Plans. He then requested a comprehensive list of Employee/Shareholders who are East Coast Local 600 Directors of Photography working under the AICP Commercial Agreement, who are also working as Directors with contributions being remitted to the DGA Plans. The list should include individual names, company names, work histories, etc. He also requested a calculation of the amounts of contributions that would be due retroactively. This list will aid the Subcommittee in determining the scope of the proposal and any possible retroactive applicability.

> The Committee recommended holding another Subcommittee meeting once these minutes have been circulated, the comprehensive list of individuals is available, and Counsel Wisnev has a draft Pension Amendment ready for discussion.

**B.   Adjournment**

The meeting was adjourned at 1:20 p.m., subject to rescheduling.

Respectfully submitted,

The Jt. Legal Subcommittee

**Note: This is Attorney-Client Privileged Information**