UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

PIG NEWTON, INC.,

<div style="margin-left:2em">Plaintiff,</div>

<div style="margin-left:2em">-against-</div>

THE BOARDS OF DIRECTORS OF THE
MOTION PICTURE INDUSTRY PENSION
PLAN, THE MOTION PICTURE
INDUSTRY INDIVIDUAL ACCOUNT
PLAN, AND THE MOTION PICTURE
INDUSTRY HEALTH PLAN,

<div style="margin-left:4em">Defendants.</div>

Case No. 13-CIV-7312 (KPF)

**DECLARATION OF SHANDA
ZUNIGA IN SUPPORT OF
DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT**

SHANDA ZUNIGA hereby declares as follows:

1. I have been the Manager of the Employer Contracts Department of the Motion Picture Industry Pension and Health Plans (together, with the Motion Picture Individual Account Plan, the "Plans") since January 1, 2002. I have been employed by the Plans since December 1990, first as an Eligibility Department Representative. I was promoted to Assistant Manager of the Eligibility Department in 1994, followed by a promotion to Manager of the Eligibility Department in 1995. I make this Declaration in support of Defendants' motion for summary judgment in the above-referenced case.

2. As Manager of the Plans' Employer Contracts Department, I am responsible for overseeing the staff and daily operations of the Department and providing Union and Employer parties with appropriate information pertaining to their obligations to make contributions to the Plans. In my current position and through my prior positions with the Plans, I have knowledge and familiarity with the operation of the Plans, including with various industry collective bargaining agreements, contribution and eligibility requirements, the terms of the Plans' governing documents, and with the Plans' records.

<div style="text-align:center">1</div>

3.   While the Pension Plan's Trust Agreement has been amended since 2009, the provisions within the Pension Plan Trust pertaining to Controlling Employees have not changed since 2010.

4.   The Plans are multi-employer plans that were established in 1952 (Health Plan), 1953 (Pension Plan), and 1979 (Individual Plan) pursuant to trust instruments entered into by and between certain employers and members of an employer association, and various unions which represent individuals employed in a wide variety of crafts within the entertainment industry.

5.   The Plans provide pension, health, and individual retirement benefits to approximately 55,000 individuals (plus their dependents) who work in the entertainment industry throughout the United States and Canada under hundreds of CBAs and participation agreements which provide for contributions to the Plans.

6.   The Plans receive and maintain copies of all collective bargaining agreements which obligate employers to contribute to the Plans.

7.   Attached hereto as **Exhibit A** and **Exhibit B**, respectively, are copies of collective bargaining agreements with Studio Transportation Drivers Local 399, International Brotherhood of Teamsters and Theatrical Teamsters Local 817.  (Bates Nos. PN000763-PN000767; D03949-D03951.)

8.   For decades, the Plans' Trust Agreements have contained provisions pertaining to "Controlling Employees."

9.   Pig Newton's collective bargaining agreements with the IATSE are East Coast agreements as described in Article II, Section 1.B.3 of the Trust Agreement's Exhibit A(30).

10.  The Controlling Employee provisions serve the purpose of addressing the problem that

2

certain individuals, in addition to performing services under CBAs providing for contributions to the Plans, held a relationship to their signatory employers under which they were in a position to control the number of hours contributed on their behalf. This resulted in a number of situations under which such employers contributed the minimum number of hours needed to keep such Controlling Employees eligible for health benefits or pension and IAP vesting credits. The Controlling Employee provisions were designed to ensure that if a Controlling Employee works any hours under a CBA requiring contributions to the Plans, the Controlled Employer must make contributions on their behalf for a specified number of hours per week and weeks per year, regardless of the number of hours actually worked.

11. Attached hereto as **Exhibit C** is a copy of the Auditor's Outline for the November 29, 2009 to January 29, 2011 audit of Pig Newton, Inc. (Bates Nos. D005702-D005703.)

12. Attached hereto as **Exhibit D** are the Plans' records of all contributions made by Pig Newton on behalf of Louis Szekely to date. (Bates Nos. D004414, D005724.)

13. Attached hereto as **Exhibit E** are emails dated March 29, 2012-March 30, 2012 between Pig Newton and Sandra Gallegos of the Plans' Employer Contracts Department. (Bates Nos. D005677-D005682.)

14. Attached hereto as **Exhibit F** is a letter dated November 12, 2012 from the Plans to Pig Newton, notifying Pig Newton of their intent to conduct an audit relating to Plaintiff's contributions to the Plans. (Bates No. D004411-D004413.)

15. The Plans' records indicate that, to date, Pig Newton has not made the contributions demanded in the March 15, 2012 audit report or in the Controlling Shareholder Billing letters dated thereafter.

16. Pig Newton made no contributions to the Plans for Mr. Szekely the period encompassing Season One of the Series "Louie."

17. The Plans' records show that Pig Newton owes the Plans, as of June 24, 2014, a total of $116,366.40 relating to delinquencies for its Controlling Employee. For the audit period of January 30, 2011 to November 12, 2012, Pig Newton owes $27,935.16 in contributions, interest of $7,753.17, liquidated damages of $7,753.17, and audit fees of $2,070.00, for a total of $45,511.50. For the periods before and after the audit (i.e., April 16, 2010 through January 29, 2011 and November 13, 2012 to June 24, 2014, respectively), Pig Newton owes $48,858.14 in contributions, $10,998.38 in interest, and $10,998.38 in liquidated damages, for a total of $70,854.90.

18. The Plans' Trust Agreements require Controlled Employers to contribute on behalf of Controlling Employees, depending on the type of collective bargaining agreement under which work is performed, at the rate of either 56 hours per week for not less than forty-eight (48) weeks in any calendar year, or at the rate of forty (40) hours per week and for not less than fifty (50) weeks in any calendar year, regardless of the number of weeks in which the Employee performs any work. (Exhibit A(30), Article II, Section 4.) The 56-hour and 40-hour Controlling Employee requirements have consistently been interpreted as guarantees by the Plans' Directors.

19. The Plans have regularly encountered instances where individuals attempt to qualify for benefits through the Plans by improperly representing themselves as Controlling Employees. That is, these individuals improperly seek application of the Controlling Employee provisions to themselves and their businesses in an attempt to attain benefits.

20. The Plans' records indicate that Pig Newton reported time and made contributions for Susan Morse during the period March 31, 2012 through August 4, 2012, but it made no contributions for Mr. Szekely during that period.

I declare under the penalty of perjury that the foregoing is true and correct.

Executed on July 11, 2014

Shanda Zuniga

# EXHIBIT A

## MEMORANDUM AGREEMENT

This **MEMORANDUM AGREEMENT** is made and entered into by and between **PIG NEWTON, INC.** ("Producer") and **STUDIO TRANSPORTATION DRIVERS LOCAL 399, INTERNATIONAL BROTHERHOOD OF TEAMSTERS,** ("Local 399").

      1.      Producer is engaged in the production of an Episodic Series for Basic Cable currently titled **"LOUIE"** ("Episodic Series for Cable"). In connection with the production of the **EPISODIC SERIES FOR CABLE**, Producer has employed a number of employees and Local 399 has established that it is the collective bargaining representative of said employees in a unit appropriate for the purposes of collective bargaining. As a consequence of the foregoing, the parties have reached the agreements hereafter set forth.

      2.      Producer recognizes Local 399 as the exclusive bargaining representative **of all classifications of employees** covered by the ***Producer-Studio Transportation Drivers Agreement and the Producer-Studio Location Managers Local 399 Agreement*** for this production only. The producer shall become signatory to these collective bargaining agreements effective as of each employee's **DATE OF HIRE** for the covered employees.

      3.      For the Episodic Series for Cable, the employees employed pursuant to these agreements shall be subject to the terms and conditions contained in sideletter No. 14 of the Producer Studio Transportation Drivers Basic Agreement. The applicable MOW provisions of the Producer-Location Manager Agreement shall also apply for the first season of the Series. For the second and third seasons, the employees employed pursuant to these agreements shall be subject to the terms and conditions contained in the applicable **EPISODIC** provisions of the Producer-Location Manager Agreement. For subsequent seasons all wages, hours, and conditions of the Producer-Studio Transportation and Location Managers Local #399 Agreements shall apply.

PN000763

4.   Producer agrees to make all trust fund benefit contributions for the covered employees effective as of each employee's **DATE OF HIRE** for the **EPISODIC SERIES FOR CABLE**.  Producer shall execute the Trust Fund Acceptance Agreement attached hereto for the purpose of effectuating the trust fund benefit contributions.  Producer shall have thirty(30) days following the execution of this Memorandum Agreement to make such contributions without liquidated damage, interest or penalties being assessed thereon.

5.   This Memorandum Agreement constitutes the full and complete agreement between the parties.

**STUDIO TRANSPORTATION DRIVERS
LOCAL UNION #399**

By_____

Its_____

Date_____

**PIG NEWTON, INC.
"LOUIE"**

By _M. Breland_ (handwritten)

Its _Executive Producer_ (handwritten)

Address _c/o Sandy Miller, Citrin, Cooperman_ (handwritten)
_529 5th Avenue   NY, NY 10017_ (handwritten)

Phone _917-653.8803_ (handwritten)

Date _June 1, 2011_ (handwritten)

## STUDIO TRANSPORTATION DRIVERS, LOCAL 399
## TRUST ACCEPTANCE

**To the Directors of the Motion Picture Industry Pension and Health Plan**
**11365 Ventura Boulevard**
**Studio City, CA 91604**

**The undersigned ("Employer") represents and agrees:**

1.      That the Employer is located in the Los Angeles area and is engaged in the production of motion pictures or is engaged primarily in the business of furnishing of materials or services for motion picture productions and

That the Employer is familiar with the provisions of the respective Agreements and Declaration of Trusts establishing the (a) Motion Picture Industry Health Plan dated October 20, 1952 as amended ("Health Plan") and (b) the Motion Picture Industry Pension Plan dated October 26, 1953, as amended, ("Pension Plan") and (c) the Motion Picture Industry Individual Account Plan dated August 1, 1979, as amended ("Individual Account Plan") (collectively referred to as the "Plans").

2.      The Employer and the Studio Transportation Drivers, Local #399 of the International Brotherhood of Teamsters ("Union") have entered into and are bound to a collective bargaining agreement ("Agreement") in effect as of **DATE OF HIRE** the Union is a party to the Health Plan as set forth in Article 1, Section 3 of the Health Plan and is a party to the Pension Plan as set forth in Article 1, Section 27 of the Pension Plan and is a party to the Individual Account Plan as set forth in Article 1, Section 29 of the Individual Account Plan.

3.      The amounts and obligations of the Employer is to make contributions to the Health Plan shall commence as of **DATE OF HIRE** and to the Pension Plan and the Individual Account Plan shall commence as of **DATE OF HIRE** in accordance with the provisions set forth in Article V of the Health Plan and Article III of the Pension Plan and Article III of the Individual Account Plan; and the provisions set forth in Article 11, Article 12, Article 12A and Article 13B of the 1993 Producer-Studio Transportation Drivers Local #399 Agreement ("Basic Agreement"), copies of which have been furnished to the Employer.

4.      In accordance with Article 13 of the Basic Agreement and in accordance with Article XIII, Section 3 of the Health Plan for the period and purposes set forth therein, the Employer commencing as of **DATE OF HIRE** shall pay to the Pension Plan, through its Administrator as agent for receipt, collection and transmittal to the Retired Employees Fund of the Health Plan, the amount of contributions set forth in Article V of the Health Plan and Article 13 of the Basic Agreement, for each hour guaranteed by or each hour worked for the Employer by employees for whom the Employer is obligated hereunder to make contributions to the Pension Plan.

**PN000765**

5.    In accordance with Article 15 (Post 60's Theatrical Motion Pictures) and Article 21 (Supplemental Markets) of the Basic Agreement, the Employer shall pay to the Plans the amounts due and in the manner set forth in the above sections as to motion pictures covered by such Post 60's and supplemental market provisions.

6.    The required contributions shall be made as to employees only for such services as the employees actually rendered in connection with motion picture production.

7.    Subject to the provisions of Article IX of the Health Plan and Article XIII, Section 2 of the Pension Plan, the Employer by this Trust Acceptance agrees and intends to become a party and to participate in the Health Plan and Pension Plan and Individual Account Plan to the same extent as though the Employer had executed such Trust Agreements or their counterparts with respect to the employees covered by the collective bargaining agreement.

8.    The Employer appoints the Alliance of Motion Picture and Television Producers, Inc. to act for the Employer under the terms and conditions of the Health Plan, the Pension Plan and the Individual Account Plan.

**STUDIO TRANSPORTATION DRIVERS**
**LOCAL UNION #399**
**INTERNATIONAL BROTHERHOOD OF TEAMSTERS**

Dated _____

By _____

Title _____

**PIG NEWTON, INC.**

**_"LOUIE"_**

Dated _June 1, 2011_

By _M. Blair Breard_

Signature _MBBreard_

Title _Executive Producer_

Address _c/o S. Miller, Citrin Cooperman_
_529 5th Ave, NY, NY 10017_

Phone _917.653.8863_

# MOTION PICTURE INDUSTRY
## PENSION & HEALTH PLANS

11365 Ventura Boulevard · Studio City, California 91604-3148
Mailing Address:
P.O. Box 1999, Studio City, California 91614-0999
818 or 310.769.0007 · Outside So. Cal 888.369.2007
FAX: 818.766.9553
www.mpiphp.org

# Company Data Sheet

## A. SIGNATORY COMPANY INFORMATION
(Please use the box as it appears)

**Company Name:** PIGS NEWTON INC

**Address:** c/o CITRIN COOPERMAN & COMPANY LTD

529 FIFTH AVE.

NEW YORK NY 10017

**Phone:** 212 697 1000 x226

**Fax:** 212 697 1670

**Contact:** SANFORD MULLER

**E-Mail:** smiller@citrincooperman.com

**Phone:**

## B. CONTROLLING OFFICER/SHAREHOLDER INFORMATION
Please list all Controlling Officers and/or Shareholders

| OFFICER/SHAREHOLDER NAME | S.S. NUMBER | TITLE | % OF SHARES | UNION AFFILIATION | | |
|---|---|---|---|---|---|---|
| | | | | **NO** | **YES/UNION** | |
| THOMAS SZASKIEWITZ | | PRESIDENT | 150% | | DGA | |
| | | | | | WGA | |
| | | | | | SAG | |
| | | | | | AFTRA | |

## C. ADDITIONAL INFORMATION

**Company's Principal Production or Service is:**

Company Type: (Check one)
- ☑ SOLE PROPRIETORSHIP (Ownership)
- ☐ A PARTNERSHIP: ☐ General ☐ Limited
- ☐ LIMITED LIABILITY CORPORATION (List ALL Members and, if applicable, union affiliation)
- ☐ A CORPORATION (List ALL Principals and, if applicable, union affiliation)

**Is this Company a Permanent Facility?**
(A Permanent Facility maintains a permanent address with year-round staff providing a service, e.g., costume house, editing facility)
- ☐ Yes ☑ No

**Does this Company have any affiliated/related entities?**
(e.g., parent company, subsidiaries, DBA's, etc.)
- ☐ Yes (Please list below) ☑ No

| Company Identification Numbers | Fed ID#: 20-8457719 |
|---|---|
| | State Employer ID#: |
| | State Corp. ID#: |

## D. REPORTING AND CONTRIBUTING INFORMATION

**Individuals authorized to act on behalf of company in reporting and contributing:**

| Name: | EMPLOYMENT PARTNERS | Title: | PAYROLL SERVICES | Ph#: | 646 473 9000 | Ext: | XM 9046 |

| Name: | | Title: | | Ph#: | | Ext: |

Check One:
- ☑ Coversheet, detail and check to be sent under separate cover for hours worked or guaranteed for all covered employees.
- ☐ Inactive from effective date of Agreement; no covered employees. We will notify the Plans of any changes in activity or status of this company immediately.

## E.
I verify that the above information is total and complete; listing of all information for the above company.

| Name: | M BLAU NGATA | Signature: | NBRelly | Title: | EMPLOYMENT PARTNERS | Date: | 6·1·11 |

Company Data Sheet
Revised 9/15/03

# EXHIBIT B

# 17405

THEATRICAL TEAMSTE                     10:23:37 a.m.   12-07-2009

---

## MEMORANDUM AGREEMENT

This **MEMORANDUM AGREEMENT** is made and entered into by and between   **Pig Newton, Inc...** and **THEATRICAL TEAMSTERS LOCAL 817 ("Local 817").**

    1.       Producer is engaged in the production of a Motion Picture titled   *tv series (multi*

    "Louie" ("Film") In connection with the production of the Film, Producer has employed a number of employees and Local 817 has established that it is the collective bargaining representative of said employees in a unit appropriate for the purposes of collective bargaining.  As a consequence of the foregoing, the parties have reached the agreements hereafter set forth.

    2.       Producer recognizes Local 817 as the exclusive bargaining representative of all classifications of employees covered by the *Casting Directors Local 817/Local399 Agreement for this production only.* The producer shall become signatory to these collective bargaining agreements effective on Date of Hire for Casting Directors and Associates.

    3.       Producer agrees to make all trust fund benefit contributions for the covered employees effective as of each employee's date of hire for the Film.  Producer shall execute the Trust Fund Acceptance Agreement attached hereto for the purpose of effectuating the trust fund benefit contributions. Producer shall have thirty (30) days following the execution of this Memorandum Agreement to make such contributions without liquidated damages, interest or penalties being assessed thereon.

    4.       The insignia of the Union shall be displayed on all prints of the Film in parity with the insignia of any other labor organization accorded screen credit.

    5.       This Memorandum Agreement constitutes the full and complete agreement between the parties.

By: _____            By _____

**THEATRICAL TEAMSTERS**            Prod Co: Pig Newton  Inc..
**LOCAL 817**                       Prod. Title: "Louie"
                                    Its:  Executive Producer
                                    Address:  c/o Mega Playground
                                    609 Greenwich St. Ste. 4A NY, NY 10014
                                    Phone:  646.278.7500
                                    Date:  12/3/09

RECEIVED

JAN 07 2010

EMPLOYER CONTRACTS

z:d

D003949

15163662609          THEATRICAL TEAMSTE                    10:20:42 a.m.    12-07-2009        1 /4

## THEATRICAL TEAMSTERS LOCAL 817
### TRUST ACCEPTANCE

To the Directors of the Motion Picture Industry Pension and Health Plan
11365 Ventura Boulevard
Studio City, CA 91604

The undersigned ("Employer") represents and agrees:

1.      That the Employer is located in the United States and is engaged in the production of motion pictures or is engaged primarily in the business of furnishing of materials or services for motion picture productions and

That the Employer is familiar with the provisions of the respective Agreements and Declaration of Trusts establishing the (a) Motion Picture Industry Health Plan dated October 20, 1952 as amended ("Health Plan") and (b) the Motion Picture Industry Pension Plan dated October 26, 1953, as amended, ("Pension Plan") and (c) the Motion Picture Industry Individual Account Plan dated August 1, 1979, as amended ("Individual Account Plan") (collectively referred to as the "Plans").

2.      The Employer and the Theatrical Drivers, Local #817 of the International Brotherhood of Teamsters ("Union") have entered into and are bound to a collective bargaining agreement ("Agreement") in effect as of **Date of Hire** for Casting Directors and Associates, the Union is a party to the Health Plan as set forth in Article 1, Section 3 of the Health Plan and is a party to the Pension Plan as set forth in Article 1, Section 27 of the Pension Plan and is a party to the Individual Account Plan as set forth in Article 1, Section 29 of the Individual Account Plan.

3.      The Employer is obligated as of date of hire, to make contributions on behalf of Casting Directors and Associate Casting Directors, to the Active Health Plan, the Retiree Health Plan, the Pension Plan, and the Individual Account Plan, in accordance with the provisions set forth in Article III of the Casting Directors Agreement, which have been furnished to the Employer.

4.   The required contributions shall be made by the Employer only for such services as the Casting Directors and Associates actually rendered in connection with motion picture or television production.

RECEIVED

JAN 07 2010

EMPLOYER CONTRACTS

6·d                                                            D ecr 20 10 12 080

5.   Subject to the provisions of Article III of the Casting Directors
Agreement, the Employer by this Trust Acceptance agrees and intends to become a
party and to participate in the Health Plan, Pension Plan, and Individual Account
Plan to the same extent as though the Employer had executed such Trust
Agreements or their counterparts with respect to the Casting Directors and
Associates covered by the collective bargaining agreement.

6..  The Employer appoints the Alliance of Motion Picture and Television
Producers, Inc. to act for the Employer under the terms and conditions of the
Health Plan, the Pension Plan and the Individual Account Plan.

**THEATRICAL TEAMSTERS**          PROD. CO. Pig Newton, Inc:.
**LOCAL 817**

PROD.TITLE: "Louie"

By:   _Thomas J. O'Donne ll_           By:   _MMBreard_

Signature:   _____          Signature:   _M. B. Breard_

Title:   _Secretary-Treasurer_          Title:   _Executive Producer_

Date:   _12/7/09_                       Address: _c/o Mega Playground_
_609 Greenwich Ste 4A_
_NYC, NY 10014_

Phone: _646 278 7500_

Date:   _12/3/09_

RECEIVED

JAN 07 2010

EMPLOYER CONTRACTS

# EXHIBIT C

# AUDITOR'S REPORT OUTLINE
## AVAILABILITY OF RECORDS AND PROCEDURES FOLLOWED

**EMPLOYER:** Pig Newton, Inc.                                    # 017405
**TITLE (S):** "Louie Season Two"                                 #
**AUDIT PERIOD:** 11/29/2009 **To** 01/29/2011      **AUDIT** # 006883

## I.  BACKGROUND

A.   Pig Newton, Inc. was established for the purpose of filming and producing thirteen episodes of "Louie Season Two". The series was filmed and produced in and around New York, New York. At the present time the business active in the industry.

B.   We inspected 15% percent of total hours and 15% of total IAP and 24 unique social security numbers. Our procedures were based on guidelines provided by the MPIPHP Audit & Collections Department. We completed a partial inspection due to not receiving all records requested. As a result of our partial inspection, no discrepancies or inconsistencies were noted; this was a PAR audit.

C.   The company signed the following agreements:

1.   **I.A.T.S.E.** – Effective December 15, 2010 and contributions were to commence as of the date of hire.
2.   **Local 600, Photographers Agreement** – Effective December 15, 2010 and contributions were to commence as of the date of hire.
3.   **Local 161, Script & Prod. Office Coord. Agreement** – Effective December 15, 2010 and contributions were to commence as of date of hire.
4.   **Local 52** - Effective December 15, 2010 and contributions were to commence as of date of hire.
5.   **Local 700** - Effective December 15, 2010 and contributions were to commence as of date of hire.

## II.  AVAILABILITY AND QUALITY OF RECORDS

The employer's accountant Biola Bankole provided us with the company's cash disbursements and invoices for review. The payroll registers were provided by the payroll company Entertainment Partners. However, no timecards or start forms were made available for inspection by Payroll Company in a timely manner, and therefore we closed the audit as a partial in accordance with the Plans instructions since no irregularities or discrepancies were noted from the records received.

## III.  TESTING

1.   **Non-Reported Employees**
We inspected the employer's payroll registers, timecards and the production payroll logs to ensure that all employees were reported. We used the Portal system to confirm work history and eligibility. No discrepancies were noted.

2.   **Guarantees**
We tested the employer's payroll records to ensure that the employer had a good understanding and that proper application with the appropriate daily, weekly, and holiday guarantees were implemented. No inconsistencies were noted.

3.   **Fractional Reporting**
We tested the employer's records to ensure that all hours, days and weeks were reported. As a result of our review, no discrepancies were noted.

4.   **Authenticity**
We inspected the employer's records to verify that reported employees were entitled to participation. As a result, no discrepancies were noted.

5.   **Agreements**
The employer is a signatory to various agreements, with special terms and conditions for participation, eligibility, special guarantee hours and wage rates. As a result of our inspection, no violations of the agreements were noted.

# AUDITOR'S REPORT OUTLINE
## AVAILABILITY OF RECORDS AND PROCEDURES FOLLOWED

6. **IAP% of applicable scale RBHR or W-2 wages (non-affiliates)**
   As a result of our test of IAP, we did not identify any discrepancies in the manner in which IAP was calculated.

7. **Disbursements**
   We inspected the employer's payroll and roster logs for any vendors or non-reported employees. As a result of our inspection we did not identify any discrepancies.

8. **Controlling-Employee / Shareholder**
   No controlling-employees/shareholders were identified as having performed covered labor.

9. **Transitions**
   Testing for transitions was not necessary because there were no new accounting systems or changes in accounting personnel.

10. **Rates & CSATF Testing**
    Not applicable due to payroll processing through Entertainment Partners.

11. **Mailing Address: Last known address;**
    Pig Newton, Inc.
    Att: Biola Bankole
    529 5th Ave
    New York, NY 10017

| AUDITOR: | Marcelo Quintana | REVIEWER: | T. Beaven | DATE: | 01/27/2012 | |
|---|---|---|---|---|---|---|

**Noncompliance Percentage:**

| Total Under-reported Hours | 0 | ÷ | Total Audited Hours | 1,402.70 | = | 0 | % |
|---|---|---|---|---|---|---|---|
| Total Under-reported IAP($) | 0 | ÷ | Total Audited IAP($) | 2584.38 | = | 0 | % |

# EXHIBIT D

## L. Szakely

| Employer ID | Employer Name | Payroll Agency | Period | Begin | End | Union | Weeks | Hours | IAP% | Batch | Report Id | Received | Processed | Late | Source | RateGroup | hours status | iap status | NewEmployerId |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Total | | | | | | | | 750 | $2,463.87 | | | | | | | | | | |
| 17405 | PIG NEWTON, INC. | | 265 | 10/6/2013 | 10/12/2013 | 0 | 1 | Vacation | 0 | 90910 | 3960358 | 1/21/2014 | 1/21/2014 | 1 | C/S | | 0 | 0 | 17405 |
| 17405 | PIG NEWTON, INC. | | 262 | 7/7/2013 | 7/13/2013 | 0 | 1 | Vacation | 0 | 87836 | 3784272 | 7/22/2013 | 7/22/2013 | 0 | C/S | | 0 | 0 | 17405 |
| 17405 | PIG NEWTON, INC. | | 258 | 2/24/2013 | 3/2/2013 | 41 | 1 | 50 | 136.36 | 86224 | 3702697 | 4/18/2013 | 4/18/2013 | 0 | C/S | 43 | 9 | 2 | 17405 |
| 17405 | PIG NEWTON, INC. | | 258 | 2/17/2013 | 2/23/2013 | 41 | 1 | 50 | 136.36 | 86224 | 3702698 | 4/18/2013 | 4/18/2013 | 1 | C/S | 43 | 9 | 2 | 17405 |
| 17405 | PIG NEWTON, INC. | | 257 | 2/17/2013 | 2/23/2013 | 0 | 1 | Vacation | 0 | 79404 | 3368509 | 3/16/2012 | 3/16/2012 | 1 | C/S | | 0 | 0 | 17405 |
| 17405 | PIG NEWTON, INC. | | 241 | 10/2/2011 | 10/8/2011 | 0 | 1 | Vacation | 0 | 79404 | 3368508 | 3/16/2012 | 3/16/2012 | 1 | C/S | | 0 | 0 | 17405 |
| 17405 | PIG NEWTON, INC. | | 238 | 7/17/2011 | 7/23/2011 | 41 | 1 | Vacation | 0 | 75558 | 3182286 | 7/29/2011 | 8/12/2011 | 0 | C/S | | 0 | 0 | 17405 |
| 17405 | PIG NEWTON, INC. | | 238 | 7/10/2011 | 7/16/2011 | 41 | 1 | 50 | 168.55 | 75453 | 3180967 | 7/29/2011 | 8/12/2011 | 0 | C/S | 7 | 0 | 0 | 17405 |
| 17405 | PIG NEWTON, INC. | | 238 | 7/3/2011 | 7/9/2011 | 41 | 1 | 50 | 168.55 | 75348 | 3177341 | 7/24/2011 | 8/12/2011 | 0 | C/S | 7 | 0 | 0 | 17405 |
| 17405 | PIG NEWTON, INC. | | 237 | 6/26/2011 | 7/2/2011 | 41 | 1 | 50 | 166.55 | 75220 | 3171524 | 7/8/2011 | 7/22/2011 | 0 | C/S | 7 | 0 | 0 | 17405 |
| 17405 | PIG NEWTON, INC. | | 237 | 6/19/2011 | 6/25/2011 | 41 | 1 | 50 | 168.55 | 75126 | 3167990 | 7/5/2011 | 7/7/2011 | 0 | C/S | 7 | 0 | 0 | 17405 |
| 17405 | PIG NEWTON, INC. | | 237 | 6/12/2011 | 6/18/2011 | 41 | 1 | 50 | 168.55 | 75024 | 3163948 | 6/23/2011 | 7/5/2011 | 0 | C/S | 7 | 0 | 0 | 17405 |
| 17405 | PIG NEWTON, INC. | | 237 | 6/5/2011 | 6/11/2011 | 41 | 2 | 50 | 168.55 | 74966 | 3159178 | 6/17/2011 | 6/24/2011 | 0 | C/S | 7 | 0 | 0 | 17405 |
| 17405 | PIG NEWTON, INC. | | 237 | 5/29/2011 | 6/4/2011 | 41 | 2 | 90 | 168.55 | 74770 | 3150688 | 6/13/2011 | 6/21/2011 | 0 | C/S | 7 | 0 | 0 | 17405 |
| 17405 | PIG NEWTON, INC. | | 237 | 5/22/2011 | 5/28/2011 | 41 | 1 | 50 | 168.55 | 74668 | 3147257 | 6/8/2011 | 6/10/2011 | 0 | C/S | 7 | 0 | 0 | 17405 |
| 17405 | PIG NEWTON, INC. | | 236 | 5/15/2011 | 5/21/2011 | 41 | 1 | 50 | 168.55 | 74513 | 3140835 | 5/26/2011 | 6/6/2011 | 0 | C/S | 7 | 0 | 0 | 17405 |
| 17405 | PIG NEWTON, INC. | 3418 | 236 | 5/8/2011 | 5/14/2011 | 41 | 1 | 50 | 168.55 | 74425 | 3135026 | 5/19/2011 | 6/3/2011 | 0 | C/S | 7 | 0 | 0 | 17405 |
| 17405 | PIG NEWTON, INC. | 3418 | 236 | 5/1/2011 | 5/7/2011 | 41 | 1 | 50 | 158.55 | 74224 | 3127306 | 5/13/2011 | 6/7/2011 | 0 | C/S | 7 | 0 | 0 | 17405 |
| 17405 | PIG NEWTON, INC. | 3418 | 236 | 4/24/2011 | 4/30/2011 | 41 | 1 | 50 | 158.55 | 74224 | 3127306 | 5/13/2011 | 6/17/2011 | 0 | C/S | 7 | 0 | 0 | 17405 |
| 17405 | PIG NEWTON, INC. | 3418 | 235 | 4/17/2011 | 4/23/2011 | 41 | 1 | 50 | 168.55 | 74092 | 3123380 | 5/6/2011 | 6/13/2011 | 0 | C/S | 7 | 0 | 0 | 17405 |

D004414

[Redacted]



D005724

# EXHIBIT E

[Redacted]

**From:** Sandra Gallegos
**Sent:** Friday, March 30, 2012 12:59 PM
**To:** 'O. Valerie Nicolas'
**Cc:** 'Blair Breard'; Teri Smith
**Subject:** Pig Newton, Inc..

Dear Ms. Nicholas,

Attached is the section of the Trust Acceptance regarding Controlling Employees and also a copy of the Resolution Regarding Delayed Eligibility.

Please let me know if you should have any further questions.

Thank you,
Sandra

Sandra Gallegos

Employer Contracts Department
MOTION PICTURE INDUSTRY PENSION & HEALTH PLAN
11365 Ventura Boulevard
Studio City, CA   91604
Phone (818) 769-0007 Ext. 436
Fax (818) 766-9563

**From:** Sandra Gallegos
**Sent:** Thursday, March 29, 2012 12:42 PM
**To:** O. Valerie Nicolas
**Cc:** Blair Breard
**Subject:** RE: Pig Newton, LLC employee contributions

Dear Ms. Nichols,

1

D005677

According to the Trust Agreement, contributions for the controlling employee are due at 40 hours per week, 50 weeks per year. These contributions are due up to the date the production has wrapped and to the last date the contributions the employee(s) are submitted for. I am showing that the last contributions received for Louis Szekely are for week ending July 16, 2011 and contributions for employees have been submitted for up to week ending March 10, 2012. Our records show that Louis Szekely is listed as the controlling employee of Pig Newton, LLC. The bill I sent is only up to January 21, 2012, contribution are still due for after this date. Please let me know if you will be sending the rest of the contributions or would like another bill for January 22, 2012 to current.

Thank you,
Sandra

Sandra Gallegos

*Sandra Gallegos*

Employer Contracts Department
MOTION PICTURE INDUSTRY PENSION & HEALTH PLAN
11365 Ventura Boulevard
Studio City, CA   91604
Phone (818) 769-0007 Ext. 436
Fax (818) 766-9563

**From:** O. Valerie Nicolas [mailto:valeriepratt.acct@gmail.com]
**Sent:** Thursday, March 29, 2012 8:56 AM
**To:** Sandra Gallegos
**Cc:** Blair Breard
**Subject:** Pig Newton, LLC employee contributions

Dear Sandra,

My name is Valerie Nicolas, the production accountant on Pig Newton Inc. - "Louie" Season 3. We received your letter stating that we may owe contributions on the behalf of Louis Szekely for 07/24/11 - 01/21/12. We're a little confused about this issue because Entertainment Partners is our payroll company and they make all the contributions to MPIPHP on behalf of the company once we pay the invoices. It's possible that these contributions were made and reported incorrectly mainly because our company name is Pig Newton Inc not Pig Newton LLC. I'll contact EP and make sure they made the contributions on our behalf but can you pls check to see if the contributions were made under Pig Newton Inc as well.

Best,

--

O. Valerie Nicolas
Production Accountant

"Louie" Season 3
Pig Newton, Inc.
110 Leroy Street, 3rd Floor
New York, NY 10014
212.804.7668 tel
212.804.7659 fax
valeriepratt.acct@gmail.com

2

D005678

Motion Picture Industry Health Plan
(Inclusive of Amendments I through CXI)
Exhibit A(29), cont'd.

the sixth day not worked on distant location, contributions for "on-call" employees shall be based on seven (7) hours and for the seventh day not worked on distant location, contributions for "on-call" employees shall be based on eight (8) hours.

[58]B.   For all other nonaffiliated Employees, effective July 25, 2004, contributions shall be made for the actual number of hours worked or guaranteed, whichever is greater.  Notwithstanding the foregoing, the Employer shall not make contributions for an Employee for any day for a number of hours (rounded down, if such number is not a whole number) in excess of the compensation paid to the Employee for that day divided by the federal minimum wage rate.

[59]C.   Contributions by Employers on behalf of nonaffiliated Employees shall be made at the composite rate set forth in Article III, Section 1., Paragraph B.2.

[60]D.   Notwithstanding paragraph C, above, for production accountants who are employed in New York or New Jersey, or hired in New York or New Jersey to perform services outside those states, but within the limits of the U.S., its territories and Canada shall be made as follows:

1.   Employers who are $15 million Contributors as that term is defined above, shall make contributions at the rates set forth in Article III, Section 1,B,6,(B) and (C) above (the "Local 161 rates");

2.   All other Employers shall make contributions at the composite rate set forth in Article III, Section 1,B,3, above (the "east coast rate").

Section 4.   Controlling Employees

[61]A.   Contributions by Employers which are privately held corporations (or, effective December 26, 1999, limited liability company ("LLC")) on behalf of any Controlling Employee shall be made at the composite rates set forth in Section 1, Paragraph B., above, as set forth below. A Controlling Employee of an Employer, as described in the previous sentence, shall mean any Employee (excluding any Employee described in Section 2., Paragraph B.1. above regarding named Employers),  who  is also a shareholder of the corporation, member of the LLC or an officer of the Employer or the spouse of such a controlling shareholder (or member of the LLC) or officer.  The Employer of such Controlling Employee shall be called a Controlled Employer.  For purposes of this provision, "privately held corporations or limited liability companies" include any such entity whose shares are not publicly traded on a securities exchange or over the counter market.

[62]Effective September 1, 2002, as set forth in Article I, subsection 2(c), certain directors of photography (whether or not they previously participated in the Plan) who do not, and have not, performed work for the Controlled Employer under any Collective Bargaining Agreement (other than the Television Commercials Production Contract, Northeast Corridor and Outer Region, between A.I.C.P. and I.A.T.S.E. #600) shall not be Employees, Controlling Employees or

---

[58]   Section AMENDED 6/23/04, effective 7/25/04 (Amendment LXXIX), Article III, Section 3.B.
[59]   Section AMENDED by Resolution on 5/23/03, effective 8/3/03.
[60]   ADDED 6/22/05, retroactively effective 1/1/05. (Subsection (D) is added.)
[61]   Section AMENDED 10/23/02 (Amendment LXXII).
       Section AMENDED 6/23/04 (Amendment LXXIX), retroactively effective 1/1/04, Section 4.A.
[62]   Section AMENDED by Resolution on 12/18/02, retroactively effective 8/28/02.

D005679

Motion Picture Industry Health Plan
(Inclusive of Amendments I through CXI)
Exhibit A(29), cont'd.

Participants in the Plan for the Controlled Employer on and after September 1, 2002. Thus, the Controlled Employer shall not contribute on behalf of such person, but shall continue to contribute on behalf of other Employees (and such other Employees are not impacted by these rules). If any other Collective Bargaining Agreement covering directors of photography involved in commercial production provides that contributions to the Active or Retiree Funds of the Plan are not due for Controlling Employees in a manner similar to the Contract, then the rules set forth in this paragraph and Article I, subsection 2(c) of the Trust Agreement shall also apply to such Collective Bargaining Agreement, except that such rules shall be effective as of the date contributions cease for Controlling Employees under such Collective Bargaining Agreement (instead of September 1, 2002.)

[63] 1.  Contributions shall be made for such Employee for fifty-six (56) hours per week, and for not less than forty-eight (48) weeks in any calendar year, regardless of the number of weeks in which the Employee performs any work.

However, for Employees working under the following Collective Bargaining Agreements at the times specified below, contributions shall be made for such Employee for forty (40) hours per week and for not less than fifty (50) weeks in any calendar year, regardless of the number of weeks in which the Employee performs any work:

(I) effective July 1, 2002 until December 31, 2002, Employees working under an agreement specified in Exhibit A, Article III, Section 1.B.3 (an East Coast Local 700 agreement),

(ii) Employees working under the Local 700 East Coast Documentary Agreement, effective at the date the Employer became signatory to such Agreement, and

(III)        effective March 25, 2004, Employees working under Collective Bargaining Agreements described in Article III, Section 1.B.3 (East Coast agreements).

The contribution period may be reduced by the number of weeks for which the Employee establishes by documentation deemed adequate by the Plan that the Employee is receiving unemployment or disability benefits. The contribution amount for each week may be reduced by the amount of contributions made on behalf of the Employee for that week by any other Employer party to the Health Plan.

2.    Contributions shall commence on the first day of the week in which the individual becomes an Employee and shall continue under Section 4.A. until the occurrence of one or more of the following events:

a.  Employer ceases to have an obligation to contribute to the Plan on behalf of the Employees in such classifications under any collective bargaining agreement; or

---

[63]    Section AMENDED by Resolution on 4/22/98, effective 9/20/98.
Section AMENDED 10/23/02 (Amendment LXXII).
Section AMENDED 9/8/04 (Amendment LXXX).

Rev. 6/11

D005680

Motion Picture Industry Health Plan                                                Page 29
(Inclusive of Amendments I through CXI)
Exhibit A(29), cont'd.

b.   the formal dissolution of the Employer as evidenced by documentation deemed adequate by the Plan; or

c.   the Employee ceases to be a Controlling Employee, as evidenced by documentation deemed adequate by the Plan, unless the Plan has reasonable grounds to believe that the Employee continues to have control over the corporation or LLC; or

d.   retirement of the Employee under the Pension Plan or other evidence which is satisfactory (in the sole discretion of the Directors) to show that the individual is no longer working (directly or indirectly) for the Employer as an Employee and does not intend to work for the Employer as an Employee in the future; or

[64]e.   the first day the Employee is considered a Retired Employee under the Motion Picture Industry Health Plan (Retired Employees' Fund), regardless of whether the employee later becomes eligible for benefits under the Active Plan

If the obligation ceases pursuant to an event in a. through d., above and the individual subsequently re-qualifies as a Controlling Employee as defined in Paragraph A. above, the obligation shall immediately recommence pursuant to this Paragraph A. and shall continue until the occurrence of an event in a. through e., above. If the obligation ceases pursuant to an event in a. through d., above, and the individual subsequently re-qualifies as an Employee who is not a Controlling Employee or the obligation ceases pursuant to e. above and the individual re-qualifies as an Employee (whether or not he is a Controlling Employee), the Employer shall make contributions pursuant to the rules applicable for Union Employees under Exhibit A, Article III, Section 1, but the contribution rules for Controlling Employees under this Paragraph A shall not apply.

B.   Effective with the pay period which includes January 1, 1991, this Section 4, shall not apply to an Employee employed by a "loanout company" if the Collective Bargaining Agreement under which said Employee works requires that the borrowing Employer make contributions directly to the Retiree Fund on behalf of the Employee for all hours worked by or guaranteed to the Employee. The term "loanout company" is defined as a company controlled by the loaned out Employee, who is the only employee of the loanout company.

## ARTICLE IV - MAINTENANCE OF BENEFITS

[65]Section 1.   Active Employees Fund

A.   Benefits under the Active Health Plan (including the bank of hours provision and eligibility standards, dental and vision benefits and Ingenix schedules operative as of August 1, 1996) shall

---

[64]   ADDED 10/23/02 (Amendment LXXII).
[65]   Section AMENDED 10/23/02 (Amendment LXXII).
        Section AMENDED by Resolution on 5/23/03, effective 8/3/03.
        ADDED 6/26/08 (Amendment CI), retroactively effective 8/1/06. (Subsection C. was added.)

D005681

## RESOLUTION REGARDING DELAYED ELIGIBILITY

Effective April 1, 1990

In the event an Employer, which contributes on behalf of one or more Controlling Employees, becomes delinquent in contributions to the Plans (whether such delinquency relates to contributions on behalf of the Controlling Employee(s) or any other employee of the Employer), and such delinquency is not paid in full prior to the date on which the Final Notice of delinquency is sent, the eligibility of **all** Controlling Employees shall be delayed during the next Benefit Period by one month for each four weeks (or portion thereof) of delinquency during the applicable Qualifying Period. There will be a minimum of a one-month delay if a Final Notice is sent by the Plans.

In addition, if, at the end of the Qualifying Period, it is determined that an Employer, which contributes on behalf of one or more Controlling Employees, fails to meet the minimum hourly requirement (i.e., 56 hours per week, 48 weeks per year, or appropriate inactivity notice) for any such Controlling Employee, the eligibility of **all** Controlling Employees of the Employer shall be suspended until such time as the minimum requirements are met.

Such suspension of eligibility shall include eligibility based upon contributions from another Employer Party, Bank of Hours or other extension of eligibility.

The Plan staff is authorized to implement appropriate procedures and rules to effectuate this resolution.

RESOLUTION REGARDING DELAYED ELIGIBILITY.doc

D005682

# EXHIBIT F



MOTION
PICTURE
INDUSTRY
PENSION & HEALTH PLANS

November 12, 2012                                                    Audit Number: 008165

Sanford Miller
Pig Newton, Inc.
c/o Citrin Cooperman & Company
529 Fifth Avenue
New York. NY   10017

Re:      Notice of Intent to Audit
         Pig Newton, Inc.
         Louie

Dear Mr. Miller:

In accordance with the terms of the Trust Agreement (enclosed), this letter will serve as notice that you will be contacted by a member of our auditing staff in order to conduct an audit of your records relating to contributions made to the Motion Picture Industry (MPI) Pension & Health Plans. The Trust Agreement requires Pig Newton, Inc. (the "Employer") to provide records verifying the accuracy of the contributions reported to MPI, including any records that may be deemed pertinent by the auditor.

When contacted by our auditing staff, we would appreciate your cooperation in making mutually suitable arrangements to commence the examination of the Employer's records as soon as possible for the period   January 30, 2011 to November 12, 2012.

All employer obligations remain in effect during the audit procedure. Therefore, contributions must continue on a timely basis. Should you have any questions concerning this audit, please contact Ging S. Molera at ext. 396.

Sincerely,

Chuck Gordon
Manager, Audit and Collections

enclosure

cc:      Peter Robleto - Entertainment Partners
         Shanda Zuniga - Manager, Employer Contracts

Employer Number: 017405

11365 VENTURA BOULEVARD · STUDIO CITY, CALIFORNIA 91604-3148
MAILING ADDRESS: P.O. BOX 1999 · STUDIO CITY, CALIFORNIA 91614-0999
818 OR 855.789 0007 · FAX: 818.593.4714 · www.mpiphp.org

**D004411**

1993 Restated Trust Agreement
Report of Contributions

Motion Picture Industry Pension Plan: Article III, Section 8,
Motion Picture Industry Health Plan: Article V, Section 6, and
Motion Picture Industry Individual Account Plan: Article III, Section 5          Page 1

(a) The Employers shall make such reports and statements to the Directors with respect to the amount and calculation of any and all contributions as the Directors may deem necessary or desirable. The Directors may, at reasonable times and during normal business hours of any Employer, audit or cause the audit or an inspection of the records of any Employer which may be pertinent in connection with the said Contributions and/or reports and insofar as same may be necessary to accomplish the purposes of this Plan. Should any such audit or inspection disclose a delinquency, underpayment, or other erroneous reporting, the cost of the audit or inspection shall be borne by the Employer.

(b) In the event the Employer fails to make records available for audit or an inspection, the Directors may take any action necessary, including the right to sue the Employer in any court of competent jurisdiction, to compel the production of such records in which event the Employer shall be liable for all expenses of enforcement, including but not limited to, all reasonable accountants' fees, auditors' fees, attorneys' fees and costs incurred in connection therewith, in addition to any delinquent contributions, liquidated damages, interest, attorneys' fees and costs, whether or not the audit or inspection identifies delinquent contributions. The Directors may waive any or all expenses of enforcement upon good cause satisfactory to the Directors being established.

(c) If the Directors determine that, as a result of hours improperly or erroneously reported by an Employer on behalf of any individual, or that for any other reason, such individual obtains benefits to which he or she would not otherwise be entitled, the Directors may take any action necessary to recover the amount of such benefits, including the right to sue any Employer and/or individual in any court of competent jurisdiction, in which event the Employer and/or individual shall be liable to the Plan for all expenses of collection thereof including all costs incurred in connection therewith, including but not limited to, all reasonable auditor's fees and attorney's fees, incurred in connection therewith.

In any such action, the Directors may determine the Employer and individual jointly and severally liable for the amount of overpaid benefits, whereupon they shall be jointly and severally liable for interest to be calculated from the date such overpayment was made through such later date upon which actual payment occurs. The rate of interest so charged shall be determined from time to time by resolution of the Directors.

In exercising their discretions to recover claims for benefits overpayments and related damages, the Directors may waive the payment of the claim or any portion thereof in any particular case upon good cause satisfactory to the Directors being established.

1993 Restated Trust Agreement
Report of Contributions

Motion Picture Industry Pension Plan: Article III, Section 8,
Motion Picture Industry Health Plan: Article V, Section 6, and
Motion Picture Industry Individual Account Plan: Article III, Section 5                    Page 2

(d) In the event that the records of the Employer or the Plan indicate that any work performed by an Employee (whether or not for that Employer) in an audit period has been covered by a Collective Bargaining Agreement, the Directors may determine in their sole discretion for any Employer the amount of work performed for that Employer by the Employee and that some or all of the work performed by that Employee in that audit period is covered by a Collective Bargaining Agreement unless the Employer produces records adequately documenting to the satisfaction of the Directors (in their sole discretion) the extent of covered services performed. In the absence of adequately substantiating records of the Employer, the Directors may, based on other evidence or the facts of the particular case, also determine in their sole discretion that no contributions are due.

(e) In the event that an Employer shall erroneously make any contributions based upon a mistake of fact, said Contributions shall not be recoverable by the Employer unless the Employer notifies the Administrative Director for the Plan in writing of the mistaken payment within two (2) years of the date on which said mistaken payment was received by the Plan. This two-year limitation shall not be applicable to contributions made under the Supplemental Markets or Post '60s provisions of any collective bargaining agreement between the Employer and any Union party herein; said contributions may be returned within the period of six (6) months, which begins the date of controversy about the interpretation of the Supplemental Markets or Post '60s provisions of the Collective Bargaining Agreement is finally resolved by negotiated settlement, arbitration or litigation, whichever is applicable.

D004413