UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| PIG NEWTON, INC.,<br><br>                Plaintiff,<br><br>-against-<br><br>THE BOARDS OF DIRECTORS OF THE MOTION PICTURE INDUSTRY PENSION PLAN, THE MOTION PICTURE INDUSTRY INDIVIDUAL ACCOUNT PLAN, AND THE MOTION PICTURE INDUSTRY HEALTH PLAN,<br><br>                Defendants. | Case No. 13-CIV-7312 (KPF)<br><br>**DECLARATION OF FRANKLIN MOSS** |

I, **FRANKLIN K. MOSS**, hereby declare as follows:

1. I am a member of Spivak Lipton LLP, attorneys for the Motion Picture Industry Pension, Health and Individual Account Plans ("the Plans"). I make this Declaration in support of the Plans' application for attorneys' fees in this action.

2. While the amount of money directly at stake in this action was not large, the issues raised were of monumental significance to the Plans. The Plaintiff – Counterclaim Defendant's attack on the Plans' "Controlling Employee" rules would, if successful, have invalidated Plan rules affecting over one hundred current "Controlled Employers." While, as the Court has recognized, there is no evidence that Pig Newton, Inc. ("Pig Newton") intended to defraud or manipulate the Plans, the Plans have long experience with less scrupulous Controlling Employees who have in the past sought to utilize their control over their reported hours either to obtain health or pension benefits or alternatively, to avoid paying contributions on their hours worked.

3. Because of the significance of the matter to the client, it was primarily staffed by two firm senior partners, Gillian Costello and myself. I am a 1978 graduate of Harvard Law

1

School. Except for one year clerking with the United States Court of Appeals for the Second Circuit and two years on the faculty of New York University School of Law, I have been devoted since graduation almost exclusively to the representation of labor unions and employee benefit plans. For at least the past fifteen years, I have devoted a majority of my time to the representation of Taft-Hartley multiemployer plans such as the Motion Picture Industry Plans. For what little it may be worth, I have been recognized as a Super Lawyer for the past five years.

4. Gillian Costello is a 1996 graduate of Northeastern University School of Law. Since graduation, she has devoted a majority of her time to the representation of labor unions and Taft-Hartley multiemployer plans. Ms. Costello has been recognized as a Super Lawyer for the past four years.

5. In addition to Ms. Costello and myself, two of my junior partners, Nicole Perez and Denis Duffey, performed limited work on this case. Ms. Perez is a 2000 graduate of Columbia Law School, and other than six months with the firm of Hughes Hubbard and Reid, has been with Spivak Lipton for her entire career, representing labor unions and employee benefit plans. Mr. Duffey is a 1998 graduate of Columbia Law School, where he was an editor of the Law Review. Other than one year clerking for the United States Court of Appeals for the Fourth Circuit, he has been with Spivak Lipton since graduation, initially part-time as a law graduate, and since his admission to the bar in 2004, full time, primarily representing unions and employee benefit plans.

6. Spivak Lipton, along with three other law firms, serves as regular co-counsel to the Plans. Spivak Lipton has served as co-counsel since 2006; prior to that time, we performed occasional legal work for the Plans. In 2013, the Plans paid fees to regular co-counsel at the blended contractual rate for all attorneys of $420 per hour. In 2014, the rate was $435 per hour.

A request for an increase to $450 per hour for 2015 work is pending; the request will be considered by the Legal Committee of the Plans at a forthcoming meeting on April 21.

7. The Plans in aggregate have approximately $8 billion in assets and are the largest plans my firm represents. We serve as co-counsel to three other groups of plans with assets of $1 billion or more. For each of those clients, the hourly rates between 2013 and 2015 for partners with Ms. Costello's and my experience has been between $500 and $615 per hour. Hence, because this action was staffed primarily by two senior partners, and the Plans use a blended rate for associates and all partners, our fees to the Plans in this case were significantly less than they would have been with other similar plans that do not use a blended rate.

8. Our hourly rates are at the low end for representation of large and complex employee benefit plans subject to the vagaries of ERISA. For example, our co-counsel on the three other large Taft-Hartley plan groups we represent is the firm of Proskauer Rose LLP. Proskauer's regular hourly rates for partners with experience and credentials similar or inferior to ours range from the $700s to over $900 per hour. Similarly, Mitchell Silberberg, one of the firms that is co-counsel with us on the Plans, has reported that its regular rate for the partners servicing the Plans exceeds $650 per hour.

9. Although this action was resolved on cross-motions for summary judgment, it demanded far more attorney time and sophistication than a typical ERISA collection action. Pig Newton raised novel and important questions concerning the scope and meaning of the Second Circuit decision in La Barbera v. J.D. Collyer Equipment Corp., 337 F.3d 132 (2d Cir. 2003). In addition, the Employer questioned the Plan Directors' interpretations of various Trust provisions as well as interpretations of the applicable collective bargaining agreements. While there was only one deposition, written discovery was extensive, with Pig Newton's document requests

3

requiring extensive research into Plan records going back to the 1970s. This involved reviewing and analyzing many thousands of pages of Plan records pertaining to Controlled Employers. Review of Plaintiff's document responses likewise involved reviewing and analyzing thousands of pages of Plaintiff's pay records and other documents. In addition, the Plans filed an Amended Counterclaim, after it was discovered in the course of the Controlling Employee's deposition that, contrary to the allegations in Plaintiff's Complaint, he had performed bargaining unit work in Season One of the television series "Louie."

10. In 2013, as indicated on the attached time record (Exhibit A hereto), I devoted 4.2 hours and Ms. Costello devoted 7.5 hours to this lawsuit, for a total of 11.70 hours. That time included the initial review of the pleadings and facts, telephone conferences and emails with Pig Newton's attorneys William Zuckerman and Elizabeth O'Leary, discussion with Fund co-counsel, Kathryn Halford, the West Coast attorney who had handled this matter for the Plans prior to commencement of litigation, preliminary research, and communications with client representatives, including Charles Killian. It also included communications of approximately .2 hours on November 14 with an attorney for AIG, the Plans' fiduciary liability carrier, in an effort—to date unsuccessful—to obtain insurance coverage for this litigation. Deleting that insurance-related time, the Plans incurred $4,830 in legal fees (11.5 hours x $420 per hour) for legal services in 2013.

11. In 2014, as indicated on the attached time record (Exhibit B hereto), I devoted 72.5 hours to this matter, Ms. Costello devoted 382.45 hours, Ms. Perez devoted 18 hours and Mr. Duffey devoted 3.35 hours, for a total of 476.3 hours. The time included, inter alia, preparation of our Answer and Counterclaim and of our Amended Answer and Counterclaim; drafting of the Plans' discovery demands and compliance with Pig Newton's discovery demands;

4

status reports and discussions with my clients of possible settlement; legal research and drafting in relation to the Plans' motion for summary judgment and responding to Pig Newton's cross-motion, conferences with the Court, and the deposition of Pig Newton's principal, Louis Szekely.

12. Both Ms. Costello and I attended Mr. Szekely's deposition; I did no questioning of Mr. Szekely, and hence did not bill my clients for the four hours I attended on April 8.

13. In addition, on January 13 and 23, February 10, 11, 12, and 13, June 30, July 22, 23 and August 18 and 26, Ms. Costello or I devoted a total of 3.7 hours to dealing with the insurance coverage issues. Subtracting that time, and the time I spent at Mr. Szekely's deposition, yields a total of 468.6 hours in 2014, for a total of $203,841 for that year.

14. In 2015, as of April 3 (See Exhibit C, hereto), the firm has devoted 18.8 hours to this matter (excluding one-tenth of an hour devoted to the insurance issue), including time reviewing and analyzing this Court's March 5 Opinion, communications with the client and with Pig Newton's attorneys, computation of the damages, interest, and liquidated damages due under the March 5 Opinion, and preparation of the attorneys' fee application. Of that time, 5.5 hours were performed by me, 9.5 hours were performed by Ms. Costello, and 3.8 hours by Nicholas Johnson. Mr. Johnson is a 2013 graduate of Georgetown Law School who recently joined Spivak Lipton after a year with Blake and Uhlig in Kansas City. He is a member of the Kansas and Maryland bars, but not yet of the New York bar. Because he is not a member of the New York bar, we will be billing his time to the client at a law clerk rate of $125 per hour. Hence, if the Funds grants our request for a $450 blended rate for admitted attorneys, we will be billing (excluding the insurance-related .1 hour) a total of $7,225.00 for 2015 work through April 3 (15 x $450 + 3.8 x $125).

5

15. All of the firm's time devoted to this matter for 2013 and 2014 (except for the four hours spent at Mr. Szekely's deposition) was billed to and paid by the Plans pursuant to our firm's billing arrangement with the Plans. None of the 2015 time has been billed to date. The rate at which it will be billed will be subject to the determination of the Plans' Legal Committee on April 21, 2015.

16. In reviewing the time sheets, I have noticed some activities (in particular for preparing our Answer and Counterclaim) on which more than the expected time was devoted, and other entries that might be challenged on vagueness or other grounds. Accordingly, we respectfully suggest that the attorneys' fee award be reduced by 5% to take into account those time entries.

17. To date, we have incurred $6,449.71 in disbursements payable by the Plans under our billing arrangement. However, that figure includes items such as Westlaw research and secretarial overtime that courts generally will not accept. Accordingly, we request an award of the costs and disbursements in the sum of $1,242.73, including $1,172.36 for a Court Reporter, $35.41 for a messenger, and $34.96 in United Parcel charges. Attached hereto as Exhibit D are receipts for costs for which reimbursement is sought.

18. In summary, the Plans believe that the attorney time devoted to this matter; the blended hourly rates at which we have been paid by our client; and our disbursements incurred were eminently reasonable, particular given the 5% reduction I have suggested.

I declare under the penalty of perjury that the foregoing is true and correct.

Executed on April 9, 2015

_____
Franklin K. Moss (FM 9161)