**Kauff McGuire & Margolis LLP**
**950 Third Avenue**
**Fourteenth Floor**
**New York, New York 10022**
**(212) 644-1010 (Tel)**
**(212) 644-1936 (Fax)**

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| PIG NEWTON, INC.,<br><br>                    Plaintiff,<br><br>          -against-<br><br>THE BOARDS OF DIRECTORS OF THE MOTION PICTURE INDUSTRY PENSION PLAN, THE MOTION PICTURE INDUSTRY INDIVIDUAL ACCOUNT PLAN, AND THE MOTION PICTURE INDUSTRY HEALTH PLAN,<br><br>                    Defendants. | Case No.: 13-CIV-7312 (KPF) |

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS'**
**APPLICATION FOR DAMAGES, ATTORNEYS' FEES AND COSTS**

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ........................................................................................ ii

PRELIMINARY STATEMENT ................................................................................ 1

LEGAL STANDARD.............................................................................................. 2

THE PLANS' FEE APPLICATION ....................................................................... 3

ARGUMENT........................................................................................................... 3

    I.       THE AMOUNT OF HOURS EXPENDED WAS EXCESSIVE ......................... 3

           A.    The Plans Billed an Excessive Number of Hours on the Answer and Counterclaim and the Amended Counterclaim .................................. 5

           B.    The Plans Billed an Excessive Number of Hours to Respond to Discovery Requests.................................................................................. 6

           C.    The Plans Billed an Excessive Number of Hours on the Summary Judgment Motion ..................................................................................... 7

    II.      PARTNERS PERFORMED ASSOCIATE AND PARALEGAL WORK ........... 9

    III.    THE APPLICATION INCLUDES OTHER INAPPROPRIATE BILLING ...... 11

    IV.    THE RATES CHARGED ARE UNREASONABLE......................................... 13

    V.     AN ACROSS-THE-BOARD REDUCTION OF 70% IS APPROPRIATE........ 15

CONCLUSION....................................................................................................... 16

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Annuity, Welfare and Apprenticeship Skill Improvement & Safety Funds of the Int'l Union of Operating Engineers, Local 15, 15A, 15C and 15D, AFL-CIO v. Eastport Excavation & Utilities, Inc.,*
3 F. Supp. 3d 204 (S.D.N.Y. 2014) ...................................................................... 10, 14

*Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany and Albany County Board of Elections,*
522 F.3d 182 (2d Cir. 2007) ......................................................................................... 2

*Boards of Trustees of the Ins., Annuity, and Apprenticeship Training Funds of Sheetmetal Workers' Int'l Ass'n, Local Union No. 137 v. Frank Torrone & Sons, Inc.,*
No. 12-CV-3363 (KAM) (VMS), 2014 WL 674098 (E.D.N.Y. Feb. 3, 2014) .......................................................................................................................... 5

*Boards of Trustees of the Ins., Annuity, Scholarship, and Apprenticeship Training Funds of Sheetmetal Workers' Int'l Ass'n, Local Union No. 137 v. Liberty Signs, Inc.,*
No. CV 10-1737(ADS)(AKT), 2011 WL 4374519 (E.D.N.Y. Aug. 30, 2011) ....................................................................................................................... 15

*Gesualdi v. C.F.I. Assocs., Inc.,*
No. CV 09-5454 (FB)(JO), 2011 WL 1322315 (E.D.N.Y. Mar. 10, 2011) .................... 16

*Gesualdi v Diversified Carting, Inc.,*
No. CV 10-2561 (SIL), 2014 WL 5475357 (E.D.N.Y. Oct. 29, 2014) ............................ 9

*Gesualdi v. Frank J. Batchelder Transp. LLC,*
No. 10-CV-320 (ENV) (JMA), 2010 WL 4608270 (Aug. 5, 2010) ............................... 8

*Gesualdi v. General Concrete, Inc.,*
No. 11-CV-1866 (CBA) (JO), 2013 WL 1192967 (E.D.N.Y. Feb. 1, 2013) .................... 16

*Gesualdi v. Interstate Masonry Corp.,*
No. 12-CV-0383 (NGG) (VMS), 2014 WL 1311709 (E.D.N.Y. Mar. 25, 2014) ......................................................................................................................... 12

*La Barbera v. Almar Plumbing & Heating Corp.,*
No. 07-CV-4697 (DLI) (JMA), 2008 WL 3887601 (E.D.N.Y. Aug. 20, 2008) ......................................................................................................................... 16

ii

*La Barbera v. ASTC Labs., Inc.*,
    752 F. Supp. 2d 262 (E.D.N.Y. 2010)................................................................. 8

*La Barbera v. J.D. Collyer Equipment Corp.*,
    337 F.3d 132 (2d Cir. 2003) ...........................................................3, 4, 5, 7

*La Barbera v. Ovan Constr., Inc.*,
    No. CV-06-2867 (SLT) (VVP), 2011 WL 5822629 (E.D.N.Y. Sept. 20,
    2011)................................................................................................................... 9

*La Barbera v. VLF Mgmt. Corp.*,
    No. 08-CV-2615 (ENV) (MDG), 2012 WL 1576109 (E.D.N.Y. Apr. 3,
    2012)................................................................................................................12

*Laser Lite Electrical Inc. v. United Welfare Fund-Welfare and Security
    Divisions*,
    No. 12-CV-3347 (PKC), 2015 WL 459412 (E.D.N.Y. Feb. 3, 2015)........................... 2, 9

*Masino v. Alza Constr. Corp.*,
    No. 09-CV-4720 (NG) (RML) 2012 WL 911548 (E.D.N.Y. Feb. 24,
    2012)................................................................................................................... 3

*New York State Teamsters Conference Pension & Retirement Fund v.
    United Parcel Service, Inc.*,
    382 F.3d 272 (2d Cir. 2004)................................................................................. 4

*Triumph Construction Corp. v. New York City Council of Carpenters
    Pension Fund*,
    No. 12 Civ. 8297(KPF), 2014 WL 6879851 (S.D.N.Y. Dec. 8, 2014)...................*passim*

*Trustees of Empire State Carpenters Annuity, Apprenticeship, Labor-
    Management Cooperation, Pension and Welfare Funds v. Penco
    United, LLC*,
    No. 13-CV-4745 (SJF) (AKT) 2015 WL 1650960 (E.D.N.Y. April 14,
    2015) ...............................................................................................................13

*Trustees of the Local 813 Pension Trust Fund v. Canal Carting, Inc.*,
    No. 12-CV-0060 (CBA) (RLM), 2014 WL 843244 (E.D.N.Y. Mar. 3,
    2014) ...............................................................................................................12

*Trustees of the Plumbers Local Union No. 1 Welfare Fund, Additional
    Security Benefit Fund, Vacation and Holiday Fund, Trade Education
    Fund, and 401(k) Savings Plan v. Temperini Mech., Inc.*,
    No. 12 Civ. 05646 (ILG) (SMG), 2014 WL 4678025 (E.D.N.Y. Sept. 19,
    2014) .............................................................................................................9, 13

iii

**Statutes**

ERISA Section 502(g)(2), 29 U.S.C. § 1132(g)(2)..................................................................... 2

ERISA Section 515, 29 U.S.C. § 1145........................................................................... 2, 6, 7, 13

## PRELIMINARY STATEMENT

Plaintiff/Counter-Defendant, Pig Newton, Inc. ("Plaintiff" or "Pig

Newton"), respectfully submits this memorandum of law in opposition to the

application for damages, attorney's fees and costs filed by Defendants/Counter-

Plaintiffs, the Boards of Directors of the Motion Picture Industry Pension Plan, the

Motion Picture Industry Individual Account Plan, and the Motion Picture Industry

Health Plan (collectively, the "Plans" or "Defendants"). Pig Newton does not object to

the Plans' application for $97,240.48 in contributions, interest, and liquidated damages

(subject to its right to appeal). Nor does Pig Newton object to the Plans' request for

$1,242.73 in costs. However, Pig Newton respectfully requests that the Court reduce the

Plans' application for attorney's fees of $205,101.20 by 70%. While at first glance such a

reduction appears drastic, it is warranted by the audacious nature of the fee application,

as evidenced by the following factors: (1) the number of hours billed – 506.8  hours –

was excessive given the uncomplicated procedural history, undisputed facts, and

discrete legal issues; (2) a substantial amount of work was performed by partners at the

Plans' law firm, Spivak Lipton LLP ("Spivak Lipton" or the "Firm"), that should have

been assigned to paralegals, associates, or support staff; (3) the Plans inappropriately

seek fees for time entries that are vague, block-billed, duplicative, or otherwise

improper; and (4) the hourly rates are unreasonable for a case seeking delinquent

contributions. We respectfully suggest that, rather than engage in a painstaking review

of each of the 306 billing entries, the Court impose an across-the-board 70% reduction.

Because the resulting award, after the reduction, would still result in a fee award 22.5%

higher than that recently approved by the Court in a comparable (although apparently

more protracted) case, *Triumph Construction Corp. v. New York City Council of*

*Carpenters Pension Fund*, No. 12 Civ. 8297(KPF), 2014 WL 6879851, at *7 (S.D.N.Y. Dec. 8, 2014), we submit that the 70% reduction is eminently reasonable.

## LEGAL STANDARD

Section 502(g)(2) of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132(g)(2), mandates that a court shall award to a benefit plan *reasonable* attorneys' fees in any action under ERISA Section 515, 29 U.S.C. § 1145, in which a judgment in favor of the plan is awarded. Because the Court granted summary judgment in favor of the Plans and ordered Pig Newton to pay contributions to the Plans, it is not disputed that the Plans are entitled to attorneys' fees. Although the award itself is mandatory, the amount of the award rests within the Court's discretion. *See Laser Lite Electrical Inc. v. United Welfare Fund-Welfare and Security Divisions*, No. 12-CV-3347 (PKC), 2015 WL 459412, at *1 (E.D.N.Y. Feb. 3, 2015). The issue here is whether the Plans' requested fees are reasonable.

The initial step in calculating attorney's fees is a lodestar calculation. "[T]he lodestar – the product of a reasonable hourly rate and the reasonable number of hours required by the case – creates a 'presumptively reasonable fee.'" *Triumph*, 2014 WL 6879851, at *2. The Plans bear the burden of proving the reasonableness and necessity of the hours spent and rates charged. In reviewing an application, the Court "step[s] into the shoes of the reasonable, paying client, who wishes to pay the least amount necessary to litigate the case effectively." *Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany and Albany Cnty. Bd. of Elections*, 522 F.3d 182, 184 (2d Cir. 2007). Courts will find the number of hours spent on litigation and the staffing pattern utilized to be unreasonable, if they are "excessive, redundant or

otherwise unnecessary." *Masino v. Alza Constr. Corp.*, No. 09 CV 4720 (NG)(RML), 2012 WL 911548, at *4 (E.D.N.Y. Feb. 24, 2012) (citations omitted), *Report and Recommendation Adopted*, 2012 WL 909936 (Mar. 14, 2012).

## THE PLANS' FEE APPLICATION

The Plans seek to recover $205,101.20 in attorney's fees for 506.8 hours of work.[1] A staggering 503 hours are attributable to work performed by two senior partners of the Firm-Franklin Moss and Gillian Costello-and two junior partners of the Firm- Nicole Perez and Denis Duffey.[2] Of the 503 partner hours, 481.65 hours were worked by the two senior partners. The breakdown of hours and rates for 2013, 2014, and 2015 is reflected on Appendix A, which is attached hereto.

## ARGUMENT

## I.    THE AMOUNT OF HOURS EXPENDED WAS EXCESSIVE.

Recognizing that the amount of fees sought far surpasses the norm for cases of this nature, Defendants argue that this litigation raised novel and important questions concerning the scope and meaning of *La Barbera v. J.D. Collyer Equipment Corp.*, 337 F.3d 132 (2d Cir. 2003), and that Pig Newton questioned the Defendants' interpretation of the Trust Agreements and the collective bargaining agreements. Defendants further assert that Pig Newton's effort to invalidate the Controlling Employee Rules made this case a matter of significance to the Plans. The Plans

---

[1] Spivak Lipton actually billed the Plans $215,896. However, the Firm has reduced the amount sought to be recovered from Pig Newton by 5% because it recognized that it devoted more time to certain activities than would be expected and certain time entries were vague or otherwise deficient. Applying the 5% discount, the Plans are seeking to recover $205,101.20 in fees. As explained herein, further substantial reduction is warranted.

[2] The remaining 3.8 hours are attributable to Nicolas Johnson, a 2013 law school graduate who is not a member of the New York bar.

characterize written discovery in this case as "extensive" because it involved "thousands of pages of documents." The Plans also refer to their filing of an Amended Counterclaim. (Decl. of Franklin Moss dated Apr. 9, 2015 ("Moss Decl."), ¶ 9.) Try as they might, none of these reasons justifies the Plans' fee application.

As this Court is well aware, this case involved Pig Newton's contribution obligation to the Plans, which entailed an interpretation of the Plans' Trust Agreements and collective bargaining agreements as well as an analysis and application of two Second Circuit decisions, *La Barbera*, and *New York State Teamsters Conference Pension & Retirement Fund v. United Parcel Service, Inc.*, 382 F.3d 272 (2d Cir. 2004), to the facts of this case.

The case proceeded without any delays, with only ten (10) months between the filing of the complaint in October 2013 and the filing of the closing summary judgment briefs in August of 2014. The Plans took one deposition; Pig Newton took none. No experts were used. No third-party discovery was conducted. No discovery disputes arose. There was not a single factual dispute. The case was resolved on cross-motions for summary judgment with no oral argument and no damages hearing. Other than the summary judgment cross-motions and the fee application, there was no motion practice. Only two brief conferences were held, an initial status conference and a pre-motion conference. The damages calculation was mechanical in that it merely required multiplying the Plans' contribution rates by 40 hours per week and 50 weeks per year. This case imposed no timing demands, with the Court accommodating the parties' requested briefing schedule. While the parties had sharply different interpretations of *La Barbera*, such differences do not justify a fee application of this magnitude. Indeed,

4827-7031-5043.1

4

the Plans' theory of the case from the outset was that *La Barbera* is inapposite because, unlike the invalidated rule in *La Barbera*, the Controlling Employee Rules were included in the Trust Agreements. (Jan. 3, 2014 Letter from Elizabeth O'Leary to Judge Polk Failla stating Defendants' view (as articulated by Defendants) of the legal issue ("Defendants believe that [*La Barbera*] is distinguishable, because the trust agreements to which Plaintiff agree[s] to be bound contained the Controlling Employee Rules."). The Plans' interpretation prevailed on summary judgment.

Notwithstanding the above, the application is full of instances in which the Plans' Firm devoted an excessive number of hours to relatively uncomplicated tasks. As just a few instances of excessive billing, we point to (a) 28.35 hours billed for preparation of the Answer and Counterclaim and 4.9 hours billed for preparation of the Amended Counterclaim, (b) 105.4 hours billed for the Plans to respond to Pig Newton's document requests and interrogatories, and (c) 112.4 hours billed for the Plans' opening summary judgment brief and another 125.5 hours billed for their closing summary judgment papers.[3]

A.    The Plans Billed an Excessive Number of Hours on the
      Answer and Counterclaim and the Amended Counterclaim.

The Plans seek to recover approximately 28.35 hours of senior partner time to prepare an answer and a counterclaim.[4] Given the Firm's expertise in ERISA,

---

[3] Pig Newton refers to "Defs. Mem. Of Law in Supp. Of Their Mot. For Summ. J." as the Plans' "opening brief" or "initial brief" and "Defs.' Mem. Of Law in Opp'n to Pls.' Mot. For Summ. J. and in Further Supp. Of Defs.' Mot for Summ. J." as the Plans' "closing brief" or "final brief."

[4] *See* Moss. Decl., Ex. B (2014 time-entries) (Entries dated 1/8/2014 (0.2), 1/9/2014 (0.2), 1/10/2014 (0.7), 1/13/2014 (1.2), 1/13/2014 (0.3), 1/14/2014 (0.3), 1/15/2014 (0.2), 1/16/2014 (1.9), 1/17/2014 (0.4), 1/17/2014 (0.6), 1/27/2014 (0.2), 1/27/2014 (0.4), 1/30/2014 (0.3), 1/30/2014 (0.2), 2/3/2014 (1.3), 2/3/2014 (0.4), 2/4/2014 (0.6), 2/4/2014 (0.2), 2/5/2014,

this amount of time should not have been required for this task, particularly since the counterclaim merely sought to recover unpaid contributions, which is standard fare in ERISA Section 515 litigation. The Firm spent approximately 4.9 hours preparing the Amended Counterclaim.[5] The amended pleading merely extended the time for which the Plans sought contributions to include Season One, and Pig Newton consented to its filing.

B.    The Plans Billed an Excessive Number of Hours
       to Respond to Discovery Requests.

The Plans' application includes approximately 105.4 hours of senior partner time for responding to Pig Newton's discovery requests.[6] This does <u>not</u> include any time billed by the Plans for propounding their own discovery, preparing for Louis Szekely's deposition, or reviewing Pig Newton's document production.

The Plans greatly overstate the complexity of the discovery involved in this case. Pig Newton's written discovery consisted of only sixteen (16) document requests and four (4) interrogatories. (Decl. of Elizabeth O'Leary dated April 24, 2014 ("O'Leary

---

(0.7), 2/5/2014 (4), 2/6/2014 (0.5), 2/6/2014 (2), 2/6/2014 (2), 2/7/2014 (1.25), 2/7/2014 (0.6), 2/7/2014 (3.7), 2/7/2014 (4).).

[5] *See* Moss. Decl., Ex. B (2014 time-entries) (Entries dated 4/10/2014 (0.3), 4/10/2014 (2.4), 4/11/2014 (0.3), 4/11/2014 (0.2), 4/14/2014 (0.2), 4/18/2014 (0.1), 4/22/2014 (0.4), 4/23/2014 (0.4), 4/25/2014 (0.1), 4/28/2014 (0.5).).

[6] *See* Moss. Decl., Ex. B (2014 time-entries) (Entries dated 2/25/2014 (0.5), 2/27/2014 (0.2), 2/28/2014 (0.2), 3/17/2014 (0.5), 3/18/2014 (0.10), 3/19/2014 (0.2), 3/20/2014 (3.3), 3/21/2014 (0.20), 3/21/2014 (4.9), 3/23/2014 (2.6), 3/24/2014 (5.6), 3/25/2014 (0.7), 3/25/2014 (7), 3/26/2014 (2.2), 3/27/2014 (1.4), 3/27/2014 (7.7), 3/28/2014 (2.3), 3/28/2014 (6.6), 3/30/2014 (1.5), 3/30/2014 (12.6) 3/31/2014 (1.9), 3/31/2014 (1.9), 3/31/2014 (8.7), 4/1/2014 (1), 4/1/2014 (6.8), 4/2/2014 (1.1), 4/2/2014 (4.5), 4/3/2014 (0.2), 4/3/2014 (5), 4/4/2014 (0.2), 4/4/2014 (2), 4/10/2014 (1.6), 4/23/2014 (0.2) 4/23/2014 (0.8), 4/24/2014 (0.1), 4/25/2014 (4.3), 4/28/2014 (0.3), 4/28/2014 (2.5), 4/29/2014 (0.2), 4/29/2014 (0.2), 4/30/2014 (0.4), 6/17/2014 (0.2), 6/17/2014 (1).).

Decl."], Exs. A and B.) The requests were directed to eliciting information regarding the Plans' own documents with respect to the Controlling Employee Rules. The voluminous nature of the Plans' document production was largely the result of the fact that each Plan has its own Trust Agreement (of hundreds of pages each) which is frequently restated.[7] The documents produced by the Plans were primarily their own documents readily available to them, such as collective bargaining agreements, meeting minutes, and pleadings from other litigations to which the Plans were parties. (O'Leary Decl, ¶ 5.) The straightforward nature of Pig Newton's discovery requests is confirmed by the absence of a single discovery dispute or even the need to meet and confer between the parties or any need for court intervention or motion practice. The impropriety of having senior partners solely responsible for document production and having them bill at partner rates for tasks such as cataloguing documents is discussed below. *See infra* pp.10-12. As also discussed below, *see infra* pp. 9-10, courts have awarded fewer hours for litigating a case from inception through summary judgment than the amount the Plans seek solely for responding to sixteen (16) document requests and four (4) interrogatories.

C.   The Plans Billed an Excessive Number of Hours
     on the Summary Judgment Motion.

        The Firm billed approximately 112.4 hours on their initial summary judgment brief.[8] This brief consisted of a recitation of the undisputed facts, an

---

[7] For example, of the 5,750 pages of documents produced, 4,129 documents consisted of the Plans' Trust Agreements and amendments thereto. (O'Leary Decl., ¶ 5.)

[8] *See* Moss. Decl., Ex. B (2014 time-entries) (Entries dated 5/2/2014 (0.1), 5/7/2014 (2), 5/8/2014 (5.2), 5/9/2014 (2.5), 5/13/2014 (1.6), 5/14/2014 (5), 5/22/2014 (0.3), 5/28/2014 (2.2), 5/29/2014 (1.8), 5/30/2014 (2.1), 6/10/2014 (2.2), 6/11/2014 (5), 6/12/2014 (5.2), 6/16/2014 (0.4), 6/17/2014 (1.2), 6/18/2014 (0.5), 6/19/2014 (5.2), 6/24/2014 (1.2), 6/26/2014

interpretation of the Plans' own documents, an explanation of fundamental ERISA principles governing delinquent contribution cases, and two paragraphs on *La Barbera*. (Defs.' Opening Br. at 22-23.) In light of the straightforward nature of this brief, the Plans' request for 112.4 hours of partner time for preparation of their brief is excessive. Given Spivak Lipton's expertise in representation of multi-employer plans, much of the opening brief on basic principles concerning ERISA Section 515 jurisprudence was surely standard fare for the Firm. Courts do take into account a firm's specialty in reviewing the reasonableness of a fee application, and expect that the expertise of the firm will result in fewer hours billed. *E.g., La Barbera v. ASTC Labs., Inc.*, 752 F. Supp. 2d 262, 278 (E.D.N.Y. 2010) (stating that 35.45 hours for alter ego research and discussions in an ERISA case are "high for attorneys claiming to be experienced in the ERISA field"); *Gesualdi v. Frank J. Batchelder Transp. LLC*, No. 10-CV-320 (ENV) (JMA), 2010 WL 4608270, at *5 (Aug. 5, 2010) (noting that "counsel is well-versed in ERISA" as one factor in determining that hours were excessive), *Report and Recommendation Adopted*, 2010 WL 4622131 (Nov 4, 2010).

The Plans billed another 125.5 hours on their closing brief.[9] While this

---

(3), 6/27/2014 (1.7), 6/30/2014 (1.6), 6/30/2014 (2.2), 7/1/2014 (1.5), 7/1/2014 (4.6), 7/2/2014 (2), 7/7/2014 (2.8), 7/8/2014 (1), 7/8/2014 (5.9), 7/9/2014 (0.1), 7/9/2014 (6.2), 7/10/2014 (1.2), 7/10/2014 (12.8), 7/11/2014 (12.5), 7/11/2014 (3), 7/11/2014 (1), 7/11/2014 (0.5), 7/11/2014 (3), 7/11/2014 (2), 7/14/2014 (0.1).).

[9] *See* Moss. Decl., Ex. B (2014 time-entries) (Entries dated 7/23/2014 (0.8), 7/28/2014 (0.6), 7/28/2014 (3), 7/29/2014 (2.7), 7/30/2014 (0.7), 7/31/2014 (0.7), 8/1/2014 (0.1), 8/1/2014 (3.5), 8/3/2014 (2), 8/4/2014 (0.5), 8/4/2014 (5.1), 8/5/2014 (0.7), 8/5/2014 (6), 8/6/2014 (1), 8/6/2014 (5), 8/7/2014 (2), 8/8/2014 (0.4), 8/8/2014 (7.2), 8/9/2014 (7.6), 8/11/2014 (1.8), 8/11/2014 (0.2), 8/12/2014 (0.7), 8/12/2014 (1.5), 8/12/2014 (8.5), 8/13/2014 (2.9), 8/13/2014 (4.5), 8/14/2014 (0.4), 8/14/2014 (0.2), 8/14/2014 (2), 8/14/2014 (11.8), 8/14/2014 (2.5), 8/15/2014 (1.5), 8/15/2014 (0.5), 8/15/2014 (2.5), 8/15/2014 (12.3), 8/15/2014 (6), 8/21/2014 (0.9), 7/25/2014 (0.5), 8/4/2014 (0.2), 8/7/2014 (6.6), 8/11/2014 (0.2), 8/11/2014 (3.5), 8/12/2014 (0.3), 8/12/2014 (0.2), 8/13/2014 (1.2), 8/14/2014 (1), 8/22/2014 (1.5).)

brief required more work than the opening brief and covered more issues, the hours are still excessive in light of the Firm's ERISA expertise and its familiarity with the Plans' rules and documents.

In sum, the nature of this litigation – *i.e.*, the parties' agreement on all facts, the uncomplicated discovery, the discrete legal issues, the mechanical and undisputed damages calculation, and the resolution of the case on summary judgment without oral argument or a damages inquest – makes the Plans' application for more than 500 hours of partner time unreasonable.

The excessiveness of the Plans' fee application is highlighted when one compares their application to the number of hours found reasonable in other ERISA cases that proceeded to summary judgment or a bench trial. For example, in *Laser Lite Electrical*, 2015 WL 459412, at *2-3, an ERISA case resolved on summary judgment, the Court determined that the amount of 80.6 hours was a reasonable amount of time. In *Trustees of the Plumbers Local Union No. 1 Welfare Fund, Additional Security Benefit Fund, Vacation and Holiday Fund, Trade Education Fund, and 401(k) Savings Plan v. Temperini Mech., Inc.*, No. 12 CIv. 05646 (ILG) (SMG), 2014 WL 4678025, at *3 (E.D.N.Y. Sept. 19, 2014), the Court determined that the amount of 83.8 hours was reasonable for an ERISA delinquent contribution/individual liability case that proceeded to summary judgment.  In *La Barbera v. Ovan Constr., Inc.*, No. CV-06-2867 (SLT) (VVP), 2011 WL 5822629, at *5 (E.D.N.Y. Sept. 20, 2011), *Report and Recommendation Adopted*, 2011 WL 5825785 (Nov. 16, 2011), the Court found that the amount of 184.5 hours was reasonable for an ERISA case, which involved discovery, a summary judgment motion, and an inquest on damages. Even the number of hours in

cases that proceeded to a bench trial pale in comparison to the hours sought here. For example, in *Gesualdi v Diversified Carting, Inc.*, No. CV 10-2561 (SIL), 2014 WL 5475357, at *5 (E.D.N.Y. Oct. 29, 2014), the Court determined that the amount of <u>267.25</u> hours was reasonable given that the case had proceeded for several years and culminated in a bench trial. In *Annuity, Welfare and Apprenticeship Skill Improvement & Safety Funds of the Int'l Union of Operating Engineers, Local 15, 15A, 15C and 15D, AFL-CIO v. Eastport Excavation & Utilities, Inc.*, 3 F. Supp. 3d 204, 219 (S.D.N.Y. 2014), the Court found <u>93.25</u> hours to be reasonable in an ERISA case that proceeded to a bench trial.

Indeed, a Westlaw search of all ERISA contribution cases in the Second Circuit dating back to December 2009 did not identify a single case where the hours requested came anywhere close to the 500-plus hours sought on this application. In short, the 500-plus hours expended on this motion fall far outside the range of reasonableness.

## II.   PARTNERS PERFORMED ASSOCIATE AND PARALEGAL WORK.

Because Spivak Lipton did not assign any paralegals or associates to this case (other than 3.8 hours worked by Mr. Johnson on the fee application), Spivak Lipton's billing records are replete with examples of partners performing associate and paralegal work and, in a few instances, secretarial work, yet charging partner rates. The chart below, which is compiled from Exhibits A, B, and C of Mr. Moss's Declaration, highlights just a few of these examples:

4827-7031-5043.1

10

| Attorney | Date | Description |
|---|---|---|
| Ms. Costello | 12/5/13 to 12/23/13 | There are six separate entries related to preparations of stipulations regarding an extension of the time to answer and notices of appearance. |
| Ms. Costello | 4/7/14 | "Review and catalogue Plaintiff's discovery production." |
| Ms. Costello | 4/24/14 | "Review and summarize deposition transcript." |
| Ms. Costello | 7/11/14 | "Prepare and file all motion papers." |
| Ms. Costello | 8/15/14 | "Oversee filing and courtesy copies." |
| Mr. Moss | 7/23/14 | "Transmit papers to R. Carmen." |
| Mr. Moss | 8/15/14 | "Edit and cite check Rule 56.1 statement." |
| Mr. Moss | 8/15/14 | "Edit and cite check summary judgment reply brief." |
| Mr. Moss | 8/18/14 | "Transmit briefs to R. Carmen." |
| Ms. Perez | 7/11/14 | "Proofread brief." |
| Ms. Perez | 7/11/14 | "Proofreading 56.1 statement." |
| Ms. Perez | 8/12/12 | "Record cite check brief." |
| Ms. Perez | 8/15/15 | "Cite checking and revise brief." |

Even acknowledging the importance of this case to the Plans, it was inappropriate to have four partners involved in all aspects and the day-to-day management of the case. While assigning partners to oversee the case and handle discrete aspects of the litigation is certainly appropriate, it is patently inappropriate to have partners cite-check and proofread briefs, summarize depositions, and catalogue discovery documents, as just a few examples. Pig Newton's objection on this point is not

intended in any way to minimize the skill or experience of the Spivak Lipton partners who handled this case. However, the Firm's decision to staff this case exclusively with partners and to assign them work that could have been easily handled by an associate or paralegal at significantly lower billing rates should not result in Pig Newton paying an outrageously high attorneys' fees bill.

Courts consider inappropriate staffing in reducing fee applications. *See La Barbera v. VLF Mgmt. Corp.*, No. 08-CV-2615 (ENV) (MDG), 2012 WL 1576109, at *7 (E.D.N.Y. Apr. 3, 2012), ("[S]ome of the work performed by attorneys could have been easily performed by paralegals who have a lower billing rate."); *id.* at 6 ("Such overstaffing [four attorneys] resulted in duplication of work and an inordinate amount of time spent on conferences between attorneys."), *Report and Recommendation Adopted*, 2012 WL 1576109 ( May 4, 2012); *Gesualdi v. Interstate Masonry Corp.*, No. 12-CV-0383 (NGG) (VMS), 2014 WL 1311709, at *12 (E.D.N.Y. Mar. 25, 2014) (senior attorneys who command high billing rates can lend their expertise to making a discrete contribution to a litigation for which their "sizable experience was particularly well suited" but when experienced attorneys take over the "day-to-day management" of an action they must receive a reduced rate.); *Trustees of the Local 813 Pension Trust Fund v. Canal Carting, Inc.*, No. 12-CV-0060 (CBA) (RLM), 2014 WL 843244, at *17 (E.D.N.Y. Mar. 3, 2014) (reduction warranted where associate performed work typically performed by litigation support staff but billed that work at the attorney rate); *Triumph*, 2014 WL 6879851 at *7 (basic legal research could have been handled by a more junior attorney rather than by an of counsel).

## III.   THE APPLICATION INCLUDES OTHER INAPPROPRIATE BILLING.

The application contains numerous other inappropriate billing entries that courts find improper in a fee application. These include: (a) vague entries, (b) block-billing by Mr. Moss, (c) duplicative entries, (d) time spent on the instant fee application, and (e) time spent correcting errors made by the Plans.

The chart below, compiled from Exhibit B to Mr. Moss's declaration, highlights just a few of the vague entries:

| Attorney | Date | Description |
|----------|------|-------------|
| Mr. Moss | 1/24/14 | "Call with R. Carmen." |
| Mr. Moss | 4/30/14 | "Review correspondence." |
| Ms. Costello | 5/5/14 | "E-mails re: case status." |
| Ms. Costello | 6/6/145 | "Notices from Court." |

Courts reduce the number of hours in a fee application where the time entries are "too vague to sufficiently document the hours claimed." *Trustees of Empire State Carpenters Annuity, Apprenticeship, Labor-Management Cooperation, Pension and Welfare Funds v. Penco United, LLC*, No. 13-CV-4745 (SJF) (AKT) 2015 WL 1650960, at *5 (E.D.N.Y. Apr. 14, 2015) (internal citations omitted).

Mr. Moss (although not Ms. Costello) engaged in block-billing for which courts generally impose a reduction in fees. *See, e.g.*, *Triumph*, 2014 WL 6879851, at *6 (stating that block-billing makes it "difficult, if not impossible" for the court to evaluate the reasonableness of time spent on a given task).

4827-7031-5043.1

The Plans seek to recover for duplicate entries by Mr. Moss on March 30, 2014 related to discovery production. (Moss. Decl., Ex. B (2014 time-entries), at 6.) In addition, the Plans made a procedural error with respect to their Rule 56.1 Statement that Ms. Costello corrected on August 21, 2014 and August 22, 2014, by preparing and filing a corrected Rule 56.1 statement. (*Id.*, Ex. B, at 41.) While errors happen, Pig Newton should not have to pay for their correction.

The Plans seek to recover fees for approximately 16.8 hours on the instant fee application.[10] (Moss Decl., Ex. C (2015 time-entries).) At least some courts have disallowed fees for time spent preparing an attorney's fees application in an ERISA Section 515 cases. *Eg., Temperini Mechanical, Inc.*, 2014 WL 4678025, at *3 (court stated that although 4.2 hours on a fee application after a successful summary judgment motion was a reasonable amount of time, ERISA does not entitle plan fiduciaries to attorneys' fees for the time spent seeking the fees themselves). In this case, the overwhelming bulk of the fees on the application should be denied for the simple reason that it was the Firm's excessive billing and improper staffing in the first instance that required yet more excessive time be devoted to preparing this application and seeking to justify the request.

## IV.   THE RATES CHARGED ARE UNREASONABLE.

The Plans have applied blended hourly rates of $420 for 2013, $435 for

---

[10] See Moss. Decl., Ex. C (2015 time-entries) (Entries dated 3/19/2015 (0.1), 3/24/2015 (1.9), 3/25/2015 (0.3), 3/25/2015 (2.2),  3/26/2015 (0.2), 3/27/2015 (0.7), 3/29/2015 (0.1), 3/30/2015 (3), 4/1/2015 (3), 4/2/2015 (0.8), 4/2/2015 (2.8), 4/3/2015 (0.3), 4/3/2015 (0.2), 4/3/2015 (1), 4/7/2015 (0.2).)

2014, and $450 for 2015 for all of the partner hours.[11] According to the Plans, these rates are "at the low end for representation of large and complex employee benefit plans subject to the vagaries of ERISA." (Moss Decl. ¶ 8.) Although that statement may be accurate in connection with other aspects of representation of employee benefit plans, it fails to recognize the lower rates generally found to be reasonable in ERISA delinquent contribution cases. For example, in *Boards of Trustees of the Insurance., Annuity, and Apprenticeship Training Funds of Sheetmetal Workers' International Ass'n, Local Union No. 137 v. Frank Torrone & Sons, Inc.*, No. 12-CV-3363 (KAM) (VMS), 2014 WL 674098, at *9 (E.D.N.Y. Feb. 3. 2014), an ERISA delinquent contribution action in which Spivak Lipton represented the plans, the Court awarded Ms. Costello's hourly rate of $225. *See also Boards of Trustees of the Ins., Annuity, Scholarship, and Apprenticeship Training Funds of Sheetmetal Workers' Int'l Ass'n, Local Union No. 137 v. Liberty Signs, Inc.*, No. CV 10-1737(ADS)(AKT), 2011 WL 4374519, at *6 (E.D.N.Y. Aug. 30, 2011), *Report and Recommendation Adopted*, 2011 WL 4373893 (Sept. 19, 2011) (court awarded $225 hourly rate for Ms. Costello).

Although rates in the Southern District are higher than rates in the Eastern District and this case had a complexity not present in *Torrone* or *Liberty Signs*, the requested rate is nevertheless high. We respectfully submit that a reasonable hourly rate for the partners who worked on this case is the $300 rate recently found to be reasonable by Your Honor for an attorney with 16 years' experience who represented the plans in T*riumph*, 2014 WL 6879851, at *4-5. To the extent that the Court deems a higher hourly rate reasonable, we respectfully suggest that the rate not exceed $325 per

---

[11] Pig Newton has no objection to the $125 hourly rate charged for the 3.8 hours performed by Mr. Johnson.

hour based on recent awards in the Southern District of New York. *See Eastport Excavation*, 3 F. Supp. 3d at 219 (approving hourly rate of $325 for a partner in an ERISA contribution case). While the Plans are free to pay a higher rate to Spivak Lipton if they so choose, "they are not free to force" Pig Newton "to subsidize that preference." *Gesualdi v. C.F.I. Assocs., Inc.*, No. CV 09-5454 (FB)(JO), 2011 WL 1322315, at *9 (E.D.N.Y. Mar. 10, 2011) ("A paying client could easily obtain the services that Schreiber provided in this case at an hourly rate of no more than $250 (and indeed could just as well insist that an even more reasonably-priced associate provide the routine services needed in this case.")).

## V.   AN ACROSS-THE-BOARD REDUCTION OF 70% IS APPROPRIATE.

"Rather than attempt to identify specific hours that should be eliminated for duplication of efforts or vagueness, a court is permitted to make a simple reduction in the number of hours 'to trim [ ] fat from a fee application.'" *Triumph*, 2014 WL 6879851, at *6; *Gesualdi v. General Concrete, Inc.*, No. 11-CV-1866 (CBA) (JO), 2013 WL 1192967, at *10  (E.D.N.Y. Feb. 1, 2013), ("One acceptable method for 'trimming the fact' from a fee application . . . and one that consumes fewer judicial resources than a painstaking review of each time-entry, is for the court to impose an 'across-the-board percentage' cut of the total amount of time claimed." [citations omitted)), *Report and Recommendation Adopted as Modified*, 2013 WL 1192954 (Mar. 23, 2013). Here the Plans' fee application consists of 306 separate entries in 50 pages and, as detailed above, includes many instances of entries that require reduction or elimination. Given these circumstances, an across-the-board reduction is warranted.

While we recognize that a 70% reduction is steep, courts have imposed

substantial across-the-board reductions when faced with excessive and unreasonable fee applications. *See, e.g., La Barbera v. Almar Plumbing & Heating Corp.*, No. 07-CV-4697 (DLI) (JMA), 2008 WL 3887601, at *8 (E.D.N.Y. Aug. 20, 2008) (imposing a 60% reduction). More to the point, even with a 70% reduction, the fee award would still exceed the fees recently awarded in cases that are appropriate benchmarks for purposes of comparison. For example, in *Triumph*, 2014 WL 6879851, at *7, this Court awarded $50,226.50 to the plans' counsel, which was a reduction from the requested $62,615 in fees.

We believe *Triumph* is an appropriate reference for evaluating the reasonableness of the Plans' fee application. Like this case, *Triumph* involved litigation between benefit plans and a contributing employer with respect to the employer's obligations to the plans. Like this case, *Triumph* was resolved on cross-motions for summary judgment. This Court described *Triumph* as "complex, in that it involved multifaceted contractual relationships, factual and legal disputes regarding the applicability of various provisions, and hard-fought discovery and motion practice by the parties." *Id.* at *5. In contrast, this case did not involve complex relationships or hard-fought discovery. If the Court imposes our requested 70% reduction, the Plans would be entitled to $61,530.36 in fees, which is still 22.5% higher than the $50,226.50 awarded in *Triumph*.

## CONCLUSION

In sum, we fully recognize that this case presented an interesting legal issue and involved conflicting interpretations of Second Circuit precedent, and we are not suggesting that this case was a typical ERISA delinquent contribution case. That

4827-7031-5043.1

17

said, however, the disputed legal issues here were discrete and were identified at the outset of the case. Given the outcome of the case, we understand that the Plans are entitled to their reasonable attorney's fees. However, for the reasons set forth herein, we do not believe the requested fees are reasonable and we respectfully request that this Court impose a 70% reduction on Spivak Lipton's billing and grant Pig Newton such other and further relief as the Court deems appropriate. In the event that the Court determines that a 70% reduction is unwarranted, we respectfully request that the Court still impose a substantial reduction.

Dated:      New York, New York
            April 24, 2014

                              Respectfully submitted,

                              KAUFF McGUIRE & MARGOLIS LLP


                                  /s/ William E. Zuckerman
                              William E. Zuckerman
                              Elizabeth O'Leary

                              950 Third Avenue, Fourteenth Floor
                              New York, New York  10022
                              Telephone:  (212) 644-1010
                              zuckerman@kmm.com
                              olearyk@kmm.com

                              *Attorneys for Plaintiff*

4827-7031-5043.1                    18

## APPENDIX A

### 2013 Time

| Attorney | Number of Hours | Hourly Rate | Total Fees |
|---|---|---|---|
| Franklin Moss | 4.2 | $420 | $1,764 |
| Gillian Costello | 7.5 | $420 | $3,150 |
| Total | 11.7 | | $4,830* |

\* This number reflects a reduction of $84 for insurance-related fees not included in the Plans' fee application.

### 2014 Time

| Attorney | Number of Hours | Hourly Rate | Total Fees |
|---|---|---|---|
| Franklin Moss | 72.5 | $435 | $31,537.50 |
| Gillian Costello | 382.45 | $435 | $166,365.75 |
| Nicole Perez | 18 | $435 | $7,830 |
| Denis Duffey | 3.35 | $435 | $1,457.25 |
| Total | 476.3 | | $203,841 * |

\* This number reflects a reduction of $3,349.50 for 3.7 hours spent in connection with insurance issues and 4 hours for dual attendance at a deposition.

### 2015 Time

| Attorney | Number of Hours | Hourly Rate | Total Fees |
|---|---|---|---|
| Franklin Moss | 5.5 | $450 | $2,475 |
| Gillian Costello | 9.5 | $450 | $4,275 |
| Nicholas Johnson | 3.8 | $125 | $475 |
| Total | 18.8 | | $7,225 |