UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------X
                            :

PIG NEWTON, INC.,                   :
                            :

               Plaintiff,    :
                            :

              v.             :
                            :

THE BOARDS OF DIRECTORS OF THE    :
MOTION PICTURE INDUSTRY PENSION    :
PLAN, *et al.*,                  :
                            :

              Defendants. :
-----------------------------------------------------X

        USDC SDNY
        DOCUMENT
        ELECTRONICALLY FILED
        DOC #: _____
        DATE FILED: <u>February 24, 2016</u>

13 Civ. 7312 (KPF)

<u>OPINION AND ORDER</u>

KATHERINE POLK FAILLA, District Judge:

      The parties to this litigation — Plaintiff/Counter-Defendant Pig Newton, Inc. ("Plaintiff" or "Pig Newton") and Defendants/Counter-Plaintiffs the Boards of Directors ("Defendants") of the Motion Picture Industry Pension Plan, Health Plan, and Individual Account Plan (the "Plans") — raised complicated issues to the Court concerning the applicability of certain provisions of the Plans' Trust Agreements to Plaintiff. Both sides fought hard and fought well, and, after extensive consideration of the parties' arguments, the Court ultimately concluded in Defendants' favor. *See Pig Newton* v. *Bds. of Dirs. of Motion Picture Ind. Pension Plans* ("*Pig Newton I*"), 95 F. Supp. 3d 366 (S.D.N.Y. 2015). Defendants now apply under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001-1191c, 1202-1242, 1301-1461, for reimbursement of attorneys' fees and costs expended in the litigation, and Plaintiff raises numerous challenges to the fees component of that application. For the reasons set forth in the remainder of this Opinion, the Court will award

attorneys' fees in the amount of $162,336.00, and costs in the amount of
$1,242.73.

**BACKGROUND**[1]

**A.    The Complaint, Counterclaim, and Cross-Motions for
Summary Judgment**

A more comprehensive statement of the facts is contained in *Pig Newton
I, see* 95 F. Supp. 3d at 368-73, from which this summary is taken.  Plaintiff
Pig Newton, the sole shareholder of which is the actor and comedian Louis
Szekely, is the producer of the television series "Louie" (the "Series"), as well as
other entertainment ventures.  Plaintiff employs Szekely in various capacities
in connection with the Series, including producer, sole writer, sole director,
star performer, and editor.  Of significance to the instant litigation are the
editing services that Szekely has provided to Plaintiff; the principal issue in this
regard was whether Plaintiff was required to make contributions to the Plans
based on the actual number of hours for which Szekely performed those editing
services, or the guaranteed minimum number of hours set forth in the
"Controlling Employee" provisions of the Plans' Trust Agreements.

Plaintiff brought this action on October 16, 2013, under the Declaratory
Judgment Act, 28 U.S.C. §§ 2201-2202, seeking a declaration that the
Controlling Employee provisions of the Plans' Trust Agreements were invalid
and unenforceable.  In response, Defendants counterclaimed under ERISA for

---

[1]    Defendants' brief in support of their motion for fees and costs is referred to as "Def. Fee
Br."; Plaintiff's opposition is referred to as "Pl. Fee Opp."; and Defendants' reply brief is
referred to as "Def. Fee Reply."  Declarations submitted in connection with the parties'
briefs are referred to using the convention "[Name] Decl." or "[Name] Reply Decl."

2

delinquent contributions under the terms of the Trust Agreements.  The parties cross-moved for summary judgment, and the Court issued *Pig Newton I*, resolving the cross-motions, on March 25, 2015.  In broad summary, the Court found that: (i) the Controlling Employee provisions of the Trust Agreements were valid, even after the Second Circuit's decision in *La Barbera* v. *J.D. Collyer Equip. Corp.*, 337 F.3d 132 (2d Cir. 2003); (ii) Plaintiff was charged with knowledge of, and assent to be bound by, the Trust Agreements; (iii) there was no "obvious conflict" between the applicable collective bargaining agreements and the Trust Agreements; and (iv) Szekely was a covered employee under the Trust Agreements.  *See* 95 F. Supp. 3d at 375-84.

At the conclusion of *Pig Newton I,* the Court acknowledged that because it had granted their motion for summary judgment, Defendants were entitled under ERISA to unpaid contributions and interest, as well as reasonable attorneys' fees and costs.  *See* 95 F. Supp. 2d at 384 (citing 29 U.S.C. § 1132(g)(2)(D); *Richardson* v. *Laws Const. Corp.*, 557 F. App'x 57, 59 (2d Cir. 2014) (summary order)).  To that end, the Court established a schedule for the submission of briefing related to the attorneys' fees and costs issue. Defendants filed their initial motion and supporting documentation on April 10, 2015 (Dkt. #47-51); Plaintiff filed its opposition papers on April 24, 2015 (Dkt. #52-53); and Defendants filed their reply papers on May 1, 2015 (Dkt. #54-56).

In the instant motion, Defendants seek attorneys' fees of $210,317.65, and costs of $1,242.73.  (Def. Fee Reply 6).  As justification, Defendants note

that the issues raised by Plaintiff were not only complex and novel, but also of "monumental significance to the Plans" (Def. Fee Br. 7); additionally, Defendants claim, the implications of a finding in Plaintiff's favor, with the potential to invalidate provisions affecting more than one hundred employers nationwide, "required a higher than ordinary degree of time and expertise." (*Id.* at 1; *see also id.* ("the stakes for the Plans in this litigation were high")).

Plaintiff challenges Defendants' application for attorneys' fees at the macro and micro levels. On the micro level, after reviewing the relevant billing records, Plaintiff contends that Defendants billed excessive amounts of time at various phases of the litigation, including (i) in preparing the Answer and Counterclaim, and then the Amended Counterclaim (Pl. Fee Opp. 5-6); (ii) responding to Plaintiff's ostensibly modest discovery requests (*id.* at 6-7); and (iii) preparing and responding to the parties' respective summary judgment motions (*id.* at 7-10).[2]  More broadly, Plaintiff takes issue with the allocation of work among senior partners, junior partners, and associates at the law firm representing Defendants (*id.* at 10-12); their use of block-billing (*id.* at 13)[3]; and the blended rate used for billing (*id.* at 14-16).  Ultimately, Plaintiff proposes an across-the-board reduction of 70%, rather than a reduction or disallowance of individual billing entries.  (*Id.* at 16-17).

---

[2]    Separately, Plaintiff objects to Defendants' recovering "the overwhelming bulk of the fees on the [instant fee] application." (Pl. Fee Opp. 14).

[3]    "Block-billing is the practice 'of aggregating multiple tasks into one billing entry.'" *Wise* v. *Kelly*, 620 F. Supp. 2d 435, 450 (S.D.N.Y. 2008) (citing *Molefi* v. *Oppenheimer Trust*, No. 03 Civ. 5631 (FB)(VVP), 2007 WL 538547, at *7 (E.D.N.Y. Feb. 15, 2007)).

## DISCUSSION

### A.   Applicable Law

ERISA provides that in a successful suit for recovery of unpaid contributions, "the court shall award the plan ... reasonable attorney's fees and costs of the action, to be paid by the [delinquent party]."  29 U.S.C. § 1132(g)(2)(D); *accord Labarbera* v. *Clestra Hauserman Inc.*, 369 F.3d 224, 226 (2d Cir. 2004); *Iron Workers Dist. Council* v. *Hudson Steel Fabricators & Erectors, Inc.*, 68 F.3d 1502, 1506 (2d Cir. 1995) ("Congress ... made the award of attorney fees mandatory for suits involving delinquent employers[.]").  While the award itself is mandatory, the amount of any such award rests within the court's discretion.  *Iron Workers*, 68 F.3d at 1505-06; *see generally Hensley* v. *Eckerhart*, 461 U.S. 424, 437 (1983); *Millea* v. *Metro-N. R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011); Fed. R. Civ. P. 54(d)(2).

To determine the amount of attorneys' fees to which a party is entitled, a court must calculate the "presumptively reasonable fee," often (if imprecisely) referred to as the "lodestar."  *Arbor Hill Concerned Citizens Neighborhood Ass'n* v. *County of Albany* (*"Arbor Hill"*), 522 F.3d 182, 183, 189-90 (2d Cir. 2008); *accord Millea*, 658 F.3d at 166.[4]  This amount reflects "the rate a paying client

---

[4]     As noted by this Court in a previous opinion, *see Echevarria* v. *Insight Med., P.C.*, 102 F. Supp. 3d 511, 516 n.2 (S.D.N.Y. 2015), the Supreme Court's subsequent decision in *Perdue* v. *Kenny A. ex rel. Winn*, 559 U.S. 542 (2010), called into question certain factors first articulated by the Fifth Circuit and relied upon by the *Arbor Hill* Court. *See Perdue*, 559 U.S. at 551 (stating that factors in *Johnson* v. *Ga. Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974), *abrogated on other grounds by Blanchard* v. *Bergeron*, 489 U.S. 87 (1989), "gave very little actual guidance to district courts").  However, *Arbor Hill* remains the standard in this Circuit. *See, e.g., K.L.* v. *Warwick Valley Cent. Sch. Dist.*, 584 F. App'x 17, 18 (2d Cir. 2014) (summary order) ("In determining an appropriate hourly rate, 'the district court should consider, among others, the *Johnson* factors.'"

would be willing to pay ... bear[ing] in mind that a reasonable, paying client wishes to spend the minimum necessary to litigate the case effectively." *Arbor Hill*, 522 F.3d at 190; *see also Perdue* v. *Kenny A. ex rel. Winn*, 559 U.S. 542, 551 (2010).  Courts calculate the presumptively reasonable fee by multiplying the reasonable number of hours that the case required by the reasonable hourly rates.  *Millea*, 658 F.3d at 166.

In reviewing a fee application, a district court must examine the particular hours expended by counsel with a view to the value of the work product to the client's case.  *See Lunday* v. *City of Albany*, 42 F.3d 131, 133 (2d Cir. 1994) (per curiam).  The court is to exclude "excessive, redundant or otherwise unnecessary hours, as well as hours dedicated to severable unsuccessful claims." *Quaratino* v. *Tiffany & Co.*, 166 F.3d 422, 425 (2d Cir. 1999) (citing *Hensley*, 461 U.S. at 433); *see generally Louis Vuitton Malletier S.A.* v. *LY USA, Inc.*, 676 F.3d 83, 111 (2d Cir. 2012) ("In assessing the reasonableness of attorney's fees, a court looks to the amount of time spent as reflected in contemporaneous time records, and then decides how much of that time was 'reasonably expended.'  If the district court finds that some of the time was not reasonably necessary to the outcome of the litigation, it should reduce the time for which compensation is awarded accordingly." (citations omitted)).

---

(quoting *Arbor Hill*)).  Therefore, this Court has considered both *Arbor Hill* and *Perdue* in resolving the instant motion.

A party seeking attorneys' fees bears the burden of supporting its claim of hours expended by accurate, detailed, and contemporaneous time records. *N.Y.S. Ass'n for Retarded Children, Inc.* v. *Carey* ("*Carey*"), 711 F.2d 1136, 1147-48 (2d Cir. 1983).

## B.     Calculating the Attorneys' Fees

### 1.     Determining the Reasonable Hourly Rates

A reasonable hourly rate represents what "a reasonable, paying client would be willing to pay," and varies by both practice area and location. *Arbor Hill,* 522 F.3d at 184, 192; *see generally Blum* v. *Stenson,* 465 U.S. 886, 895 n.11 (1984).[5]  It is determined with reference to current market rates, i.e., rates as of the time of the fee application.  *See Reiter* v. *MTA N.Y.C. Transit Auth.*, 457 F.3d 224, 232 (2d Cir. 2006) ("The rates used by the court should be current rather than historic hourly rates." (internal quotation marks and citation omitted)); *LeBlanc-Sternberg* v. *Fletcher*, 143 F.3d 748, 764 (2d Cir. 1998) ("current rates, rather than historical rates, should be applied in order to compensate for the delay in payment"); *cf. Mugavero* v. *Arms Acres, Inc.*, No. 03 Civ. 5724 (PGG), 2010 WL 451045, at *5 (S.D.N.Y. Feb. 9, 2010) (discussing use of current versus historic rates).

A court's determination of the reasonable hourly rate "contemplates a case-specific inquiry into the prevailing market rates for counsel of similar experience and skill to the fee applicant's counsel," and may "include judicial

---

[5]     The relevant community is the district in which the court sits.  *Farbotko* v. *Clinton County of New York*, 433 F.3d 204, 208 (2d Cir. 2005) (citing *Polk* v. *N.Y. State Dep't of Corr. Servs.*, 722 F.2d 23, 25 (2d Cir. 1983)).

notice of the rates awarded in prior cases and the court's own familiarity with the rates prevailing in the district." *Townsend* v. *Benjamin Enter., Inc.*, 679 F.3d 41, 59 (2d Cir. 2012) (quoting *Farbotko* v. *Clinton County of New York,* 433 F.3d 204, 209 (2d Cir. 2005)).

Defendants here seek approval of a "blended rate" — a single billing rate used where attorneys with different rates have worked together on a case. Specifically, Defendants seek an hourly rate of $420 for work performed in 2013, $435 for work performed in 2014, and $450 for work performed in 2015. (Def. Fee Br. 3). The attorneys to whom this blended rate would apply, and their respective qualifications, are as follows:

- Franklin Moss is a partner at the law firm of Spivak Lipton LLP ("Spivak Lipton"). He is a 1978 graduate of Harvard Law School with 34 years' experience in representing labor unions and employee benefit plans, and 15 years' experience focusing on Taft-Hartley multiemployer plans. While Spivak Lipton bills or has billed Defendants at the blended rates sought in the instant application, its regular hourly rate during the relevant time period for attorneys of Moss's experience was between $500 and $615.[6]

- Gillian Costello, also a partner at Spivak Lipton, is a 1996 graduate of Northeastern University School of Law who has spent the majority of her legal career representing labor unions and Taft-Hartley multiemployer plans. As with Moss, Spivak Lipton billed attorneys of Costello's experience during this period at between $500 and $615 per hour.

- Nicole Perez, a junior partner at Spivak Lipton, is a 2000 graduate of Columbia Law School; she has spent her legal career representing labor unions and employee benefit plans.

---

[6]     These statements were current as of the time of the filing of the instant application.

- Denis Duffey, another junior partner at Spivak Lipton, is a 1998 graduate of Columbia Law School who has spent the bulk of his legal career representing labor unions and employee benefit plans.

(Moss Decl. ¶¶ 3-7).[7]

Although the Second Circuit has not specifically endorsed the use of a blended rate, *see McDonald ex rel. Prendergast* v. *Pension Plan of the NYSA-ILA Pension Trust Fund*, 450 F.3d 91, 98 (2d Cir. 2006), courts in this Circuit have awarded attorneys' fees using blended rates. *See, e.g.*, *Riley* v. *City of New York*, No. 10 Civ. 2513 (MKB), 2015 WL 9592518, at *2-3 (E.D.N.Y. Dec. 31, 2015); *Akman* v. *Pep Boys Manny Moe & Jack of Delaware, Inc.*, No. 11 Civ. 3252 (MKB), 2013 WL 4039370, (E.D.N.Y. Aug. 7, 2013) (collecting cases); *In re Citigroup Inc. Sec. Litig.*, 965 F. Supp. 2d 369, 373, 394, 396, 399 (S.D.N.Y. 2013) (using several blended rates in the calculation of attorneys' fees).

There is much to commend use of a blended rate in the instant case. *See generally* Vaughn R. Walker and Ben Horwich, The Ethical Imperative of a Lodestar Cross-Check: Judicial Misgivings About "Reasonable Percentage" Fees in Common Fund Cases, 18 GEO. J. LEGAL ETHICS 1453, 1471 n.77 (2005). For starters, it is the actual rate that was negotiated with the clients, which is "obviously strong evidence of what the market will bear." *Rozell* v. *Ross-Holst*,

---

[7]     Defendants also sought an hourly rate of $125 for 3.8 hours billed by Nicholas Johnson, a 2013 graduate of Georgetown Law School who was not a member of the New York bar during the relevant time period. (Moss Decl. ¶ 14 and Ex. C). Plaintiff indicated in its opposition papers that it did not oppose the hourly rate or the number of hours billed by Johnson. (Pl. Fee Opp. 15 n.11). With the reply brief, Defendants submitted a supplemental declaration that sought an additional 5.6 hours for work performed by Johnson. (Moss Reply Decl. Ex. A). The Court presumes that Plaintiff continues to not oppose the billing rate, although it will not presume Plaintiff's accession to the additional hours.

576 F. Supp. 2d 527, 544 (S.D.N.Y. 2008).  And while a blended rate might cause concern if the majority of the work had been performed by associates or junior partners (i.e., attorneys who would customarily bill at a rate lower than the blended rate), the opposite appears to be true here:  The overwhelming majority of the work was performed by the senior partners Moss and Costello, whose respective billing rates were and are significantly in excess of the blended rates sought.  (*See* Moss Decl. Ex. A-C; Pl. Fee Opp. App. A).

Having decided to use a blended rate, the Court must identify the reasonable blended rate for this case.  Defendants argue that the reasonableness of the proffered $420, $435, and $450 hourly rates is confirmed by, among other things, (i) the non-blended rates at which each attorney bills; (ii) the higher rates at which their co-counsel to the Plans — as well as both of Plaintiff's law firms — bill; and (iii) the fact that courts in this District have approved similar or higher rates in other ERISA cases for attorneys with comparable or less experience than Defendants' counsel.  (Def. Fee Br. 3-7; Def. Fee Reply 3-4).  Indeed, attorney Moss avers, these rates are "at the low end for representation of large and complex employee benefit plans subject to the vagaries of ERISA."  (Moss Decl. ¶ 8).  Plaintiff counters that while Moss's averment "may be accurate in connection with other aspects of representation of employee benefit plans, it fails to recognize the lower rates generally found to be reasonable in ERISA delinquent contribution cases."  (Pl. Fee Opp. 15).

The Court has examined the cases cited by the parties, as well as other cases arising in the ERISA context.  It agrees with Plaintiff that delinquent contribution cases typically merit attorneys' fees awards at comparatively lower billing rates.  It disagrees, however, with the suggestion that the instant matter is akin to the typical delinquent contribution case.[8]  Quite to the contrary, this matter involved considerable briefing from the parties on issues that had wide-ranging implications for scores of other employers utilizing similar Controlling Employee provisions, not to mention a lengthy decision from this Court addressing the continuing vitality of those provisions after *La Barbera*.

The Court concludes that this case is closer to those cited by Defendants at pages 5 and 6 of their opening brief and pages 4 and 5 of their reply brief. After reviewing the relevant case law — including those Supreme Court and Second Circuit cases expressing a preference for current rather than historical rates — the Court finds that the appropriate blended rate in this case for all three years is $385.  *Compare McDonald*, 450 F.3d at 98 (finding hourly rate of $325 for experienced ERISA attorney in 2002 reasonable, and finding $390 rate "not necessarily incorrect," while overturning award at that rate for other reasons); *1199 SEIU United Healthcare Workers East* v. *South Bronx Mental Health Council, Inc.*, No. 13 Civ. 2768 (JGK)(JCF), 2013 WL 6003731, at *7 (S.D.N.Y. Nov. 13, 2013) ("Courts in this district have approved hourly rates of

---

[8]    Indeed, the legal issues in this case are considerably more complicated than the legal and factual issues in *Triumph Const. Corp.* v. *New York City Council of Carpenters Pension Fund*, No. 12 Civ. 8297 (KPF), 2014 WL 6879851 (S.D.N.Y. Dec. 8, 2014), the previous decision of this Court that both parties have cited in support of their arguments.  (*See, e.g.*, Def. Fee Br. 5; Pl. Fee Opp. 15).

$300-400 for partners in labor and employment cases."); *Gesualdi* v. *Laws Constr. Corp.*, No. 09 Civ. 1067 (DLC), 2013 WL 1155416, at *2 (S.D.N.Y. Mar. 21, 2013) (approving as reasonable, where no objection by defendant, rates of $400 for partners and $375 for of counsel in ERISA litigation involving extensive summary judgment practice); *N.Y. Dist. Council of Carpenters Pension Fund* v. *Perimeter Interiors, Inc.*, 657 F. Supp. 2d 410, 424 (S.D.N.Y. 2009) (finding that hourly rates of $425 for partners and $300 for associates were "in line with prevailing rates in the [S.D.N.Y.] community for similar services of reasonably comparable skill, expertise and reputation" (citation and alterations omitted)).

## 2. Determining the Hours Reasonably Expended

### a. The Fees Sought and the Reductions Proposed

The next step in the Court's analysis is to determine whether the hours expended by Defendants' counsel were reasonable.  In support of their fee application, Defendants have submitted a summary of time records that "specify, for each attorney, the date, the hours expended, and the nature of the work done."  *Carey*, 711 F.2d at 1148.  According to these records, Franklin Moss billed 4.2 hours on this litigation in 2013, 70.6 hours in 2014, and 17.6 hours in 2015; Gillian Costello billed 7.5 hours on this litigation in 2013, 379.95 hours in 2014, and 12.3 hours in 2015; Nicole Perez billed 18 hours on this litigation in 2014; Denis Duffey billed 3.35 hours on this litigation in 2014; and Nicholas Johnson billed 9.4 hours on this litigation in 2015.[9]

---

[9]     In calculating the hours in this case, the Court has relied on Appendix A to Plaintiff's opposition brief, as modified by page 2 of Defendants' reply brief.  The figures set forth

Franklin Moss, lead counsel for Defendants, conceded that certain of the billing entries reflected the expenditure of more time than expected or were subject to challenge on other grounds. (Moss Decl. ¶ 16). In consequence, he suggested an across-the-board reduction of 5%. (Def. Fee Br. 9). Plaintiff agrees that an across-the-board reduction is appropriate, but counters that it should be 70% in order to remedy a host of errors, including excessive hours billed at different stages of the litigation, a poor division of labor among Defendants' counsel, and inappropriate methods of billing. (Pl. Fee Opp. 16-17).

### b.    Applicable Law

It is this Court's preference to ascertain the number of hours reasonably expended by considering billing entries on an individual basis. *See, e.g.*, *Echevarria* v. *Insight Medical, P.C.*, 102 F. Supp. 3d 511, 520-22 (S.D.N.Y. 2015). Undertaking that endeavor in this case, the Court soon learned, was complicated by the vagueness of certain of the billing entries and the use by some of the attorneys of undifferentiated block billing. Courts have recognized circumstances in which vague and/or "block-billed" time records can be insufficient to substantiate a party's claimed expenditure of time. *See Thai-Lao Lignite (Thailand) Co.* v. *Gov't of Lao People's Dem. Repub.*, No. 10 Civ. 5256 (KMW) (DF), 2012 WL 5816878, at *10 (S.D.N.Y. Nov. 14, 2012) (collecting

---

in the text reflect a reduction of 4.4 hours for duplicative billing and correction of attorney errors that were identified in Plaintiff's opposition papers. (*See* Pl. Fee Opp. 14; Moss Reply Decl. ¶ 8). The 2015 figures reflect billing entries contained in the Moss Declarations submitted with the initial and reply briefs. In addition, in arriving at a dollar figure, the Court rounded to the nearest penny and rounded half to even.

cases).  However, the law does not require counsel to "record in great detail how each minute of [their] time was expended," but only to "identify the general subject matter of [their] time expenditures."  *Hensley*, 461 U.S. at 437 n.12. Thus, "'multiple entries comply with the Second Circuit's requirement of specificity,' because such entries are consistent with the *Carey* dictate that entries 'specify the date, hours expended, and nature of the work done.'" *Meriwether* v. *Coughlin*, 727 F. Supp. 823, 827 & n.5 (S.D.N.Y. 1989) (citing *Carey,* 711 F.2d at 1148).

Separately, the Second Circuit has recognized the authority of district courts "to make across-the-board percentage cuts in hours 'as a practical means of trimming fat from a fee application.'"  *In re Agent Orange Prod. Liab. Litig.*, 818 F.2d 226, 237 (2d Cir. 1987) (quoting *Carey,* 711 F.2d at 1146). Indeed, each side has requested that the Court make just such a reduction, albeit in differing amounts (5% for Defendants and 70% for Plaintiff).  Having considered the billing records and the relevant case law, this Court has adopted a modified approach, in which it applies a different percentage reduction to different categories of billing entries.

As a default — that is, for instances in which the Court finds no other issues with the billing for a particular category of entries — the Court will impose a 15% reduction to the hours billed.  This reduction addresses the Court's concerns about the vagueness of certain entries, the use of block-billing, and the "top-heavy" nature of the legal services provided.  In other words, while the Court recognizes the significance of the instant case to

14

Defendants, and the consequent need to draw on the obvious expertise of the four partners who performed the lion's share of the legal services, the fact remains that the division of labor was at times unreasonable, with multiple partners involved in the same task and, perhaps more troubling, partners performing work better assigned to associates or paralegals.  (*See, e.g.*, Pl. Fee Opp. 11 (chart)).  *See Tucker* v. *City of N.Y.*, 704 F. Supp. 2d 347, 356 (S.D.N.Y. 2010) (reducing the reasonable number of hours expended on a matter where "attorneys perform[ed] work that [could have been] done by a clerical person or at most a paralegal," including the filing of papers and the service of pleadings); *Tlacoapa* v. *Carregal*, 386 F. Supp. 2d 362, 372 (S.D.N.Y. 2005) (making across-the-board reduction where, among other deficiencies in fee application, hours were billed by a senior attorney for legal research that could have been performed by a junior associate); *cf. E.S.* v. *Katonah-Lewisboro Sch. Dist.*, 796 F. Supp. 2d 421, 431 (S.D.N.Y. 2011) ("A court may make [across-the-board percentage] reductions when attorneys engage in less skilled work, like filing and other administrative tasks [such as] ... faxing and mailing documents, making copies, filing, scanning, preparing documents for electronic filing, electronic file management, binding documents, and Bates stamping."), *aff'd*, 487 F. App'x 619 (2d Cir. 2012) (summary order), *cited in Doe* v. *Unum Life Ins. Co. of America*, No. 12 Civ. 9327 (LAK)(AJP), 2016 WL 335867, at *7 (S.D.N.Y. Jan. 28, 2016).[10]

---

[10]   In reply, Franklin Moss defends the partner-heavy team, arguing that "associates could [not] do the work nearly as efficiently."  (Moss Reply Decl. ¶ 6; *see also id.* ("Senior lawyers familiar with a matter can perform even routine tasks more efficiently and accurately than an associate unfamiliar with the record or the applicable case law.")).

### c.   Application to the Hours Billed in This Case

#### i.   2013 Billings

As noted, attorneys Moss and Costello billed 11.7 hours for work performed in 2013.  These billings largely concern a review of Plaintiff's complaint, discussions among counsel and with the clients, initial contact with Plaintiff's counsel, and the preparation and entry of a stipulation regarding the time to answer.  (Moss Decl. Ex. A).  There being no serious dispute concerning any of these entries,[11] the Court will apply only the 15% default reduction, resulting in an adjusted figure for 2013 of 9.945 hours.  Using the hourly rate of $385, the Court will award fees for 2013 in the amount of $3,828.82.

#### ii.   2014 Billings

There are significantly more hours billed for 2014 (471.9 hours), and significantly more challenges posed by Plaintiff to those hours (376.55 hours).  (*See* Moss Decl. Ex. B; Pl. Fee Opp. App. A).[12]  A general word about these challenges is in order:  Plaintiff is correct that the case was free from many of the typical "speed bumps" of federal litigation, such as extended discovery disputes or the involvement of third parties.  (Pl. Fee Opp. 4).  That said, the

---

However, Moss grudgingly admits that Plaintiff is "probably correct" that certain tasks, "such as proofreading of briefs and overseeing of filing and courtesy copies," could have been performed by associates rather than partners.  (*Id.*).  Plaintiff is more than "probably correct" on this point, and it remains noteworthy to the Court that not a single paralegal hour is billed, and not a single associate hour is billed until the instant application.

[11]   Plaintiff notes that there are six separate entries regarding the preparation of the stipulation to extend time (*see* Pl. Fee Opp. 11), but inasmuch as most of these entries are for 0.10 of an hour, no further reductions are warranted.

[12]   For the 95.35 hours as to which Plaintiff has not interposed an objection of excessive hours, the Court is applying only the 15% default reduction in hours, yielding an adjusted figure of 81.0475 hours.

legal issues in this case were quite complicated; indeed, contrary to Plaintiff's logic, the absence of precedent hindered, rather than helped, to resolve that complexity.  Put simply, the Court cannot fault Defendants (and, it suspects, both parties) for spending significant periods of time on this case, because the Court itself spent far more time than it had anticipated in resolving the parties' cross-motions.

Plaintiff challenges the 28.35 hours spent preparing the Answer and Counterclaim, as well as the 4.9 hours spent preparing the Amended Counterclaim.  (Pl. Fee Opp. 5-6).  The Court has reviewed the Answer and Counterclaim (Dkt. #9); while the "Answer" portion is largely boilerplate, the "Counterclaim" portion is not, and the Court cannot say that Defendants larded their billing records in this regard.  It will therefore apply only the 15% default reduction to the hours expended in preparing the Answer and Counterclaim, yielding an adjusted figure of 24.0975 hours.  The Amended Counterclaim (Dkt. #11), however, offers only minor edits to paragraphs 8 and 20, and the addition of paragraph 19.  Such clarifications as to date did not merit 4.9 hours in charges, and the Court accordingly will impose a 50% reduction to these hours, yielding an adjusted figure of 2.45 hours.

Plaintiff next questions the 105.4 hours that Defendants spent responding to its discovery requests, noting principally that these requests comprised only sixteen document requests and four interrogatories.  (Pl. Fee Opp. 6-7).  Defendants respond that

> There may have been "only" sixteen document[]
> requests, but the work required to comply was

> extraordinary.  Document Requests 7, 8, 9, 10, 11 and
> 12 required review (and in many cases, redaction) of
> Plan minutes, correspondence and other records going
> back to the 1960s.  Document Requests 13-15 involved
> the files of five different law firms that have represented
> the Plans in various matters over the years.  While we
> may have only located 5,750 pages of relevant
> responsive documents (including various Trust
> Agreement permutations), we were required to examine
> many times that number of documents to determine
> their relevance.

(Moss Reply Decl. ¶ 4).  Here, in particular, the Court believes that use of

senior partners, rather than junior partners or associates, to locate and review

these documents made the resulting 105.4-hour figure unreasonable, and it

will therefore impose a 25% reduction on these hours, yielding an adjusted

figure of 79.05 hours.

Plaintiff contests both the hours allocated to Defendants' brief in support

of its motion for summary judgment (112.4 hours) and the hours allocated to

Defendants' responsive brief to Plaintiff's motion for summary judgment (125.5

hours).  (Pl. Fee Opp. 7-10).  Not surprisingly, Defendants object, noting that

(i) the hours billed cover not merely the drafting of the brief, but all facets of

summary judgment practice, including the preparation of a pre-motion

submission in accordance with the Court's requirements and other

documentation attendant to the motion; and (ii) Plaintiff overlooks the

complexity of the motion, a complexity that Defendants contend was

exacerbated by Plaintiff's "'kitchen sink' approach to the litigation."  (Moss

Reply Decl. ¶ 5).

18

The Court has accepted Defendants' invitation (*see* Moss Reply Decl. ¶ 5) to review Defendants' papers in support of their motion for summary judgment (Dkt. #26-30), as well as their papers in opposition to Plaintiff's cross-motion (Dkt. #31-36).  The Court believes that a modest incremental reduction to the hours billed for Defendants' own motion is warranted, and will therefore apply a 20% reduction to that figure, yielding an adjusted figure of 89.92 hours.  It cannot say, however, that there is additional fat to be trimmed in connection with Defendants' responsive submission to Plaintiff's motion — particularly given the complexity of the issues raised therein — and will therefore apply only a 15% reduction to those hours, yielding an adjusted figure of 106.675 hours.[13]  In sum, the Court finds the reasonable number of hours for 2014 to be 383.24.  Again using an hourly rate of $385, the Court will award fees for 2014 in the amount of $147,547.40.

### iii.    2015 Billings

Defendants have billed 39.3 hours for 2015, comprising 29.9 hours billed by Franklin Moss and Gillian Costello for which payment at the blended rate is sought, and 9.4 hours billed by Nicholas Johnson for which payment at the $125 hourly rate is sought.  (Moss Decl. Ex. C; Moss Reply Decl. Ex. A).  Most of these fees concern the preparation of materials for the instant application; other tasks included the review and response to this Court's *Pig Newton I* decision and an appeal by Plaintiff (subsequently withdrawn as premature) to

---

[13]    To the extent that a portion of the 112.4 hours stems from Defendants' anticipation of Plaintiff's arguments under *La Barbera*, the Court has taken that into consideration in declining to reduce further the 125.5 hours figure.

the Second Circuit.  Plaintiff did not initially object to the fees sought on behalf of attorney Johnson, the associate involved in the preparation of the instant fee application.  However, Plaintiff argues, "the overwhelming bulk of the fees on the application should be denied for the simple reason that it was [Spivak Lipton's] excessive billing and improper staffing in the first instance that required yet more excessive time be devoted to preparing this application and seeking to justify the request."  (Pl. Fee Opp. 14).

As Defendants note (*see* Def. Fee Reply 2 n.1), the Second Circuit has not specifically addressed the propriety of recovering, under § 1132(g), fees incurred in the preparing of the fee application, and courts have adopted varying approaches to the issue.  Indeed, when this Court was first asked to consider the issue, it concluded that such fees were not recoverable.  *See Triumph Const. Corp.*, 2014 WL 6879851, at *6 (collecting cases).  Upon further reflection, the Court believes that such fees, to the extent they are reasonable, should be compensated.  The Supreme Court and the Second Circuit have consistently emphasized the salutary and conservational purposes of ERISA. *See, e.g.*, *Varity Corp.* v. *Howe*, 516 U.S. 489, 496 (1996) ("ERISA protects employee pensions and other benefits by providing insurance (for vested pension rights, *see* ERISA § 4001 e*t seq.*), specifying certain plan characteristics in detail (such as when and how pensions vest, *see* §§ 201-211), and by setting forth certain general fiduciary duties applicable to the management of both pension and nonpension benefit plans.  *See* § 404."); *Scarangella* v. *Grp. Health, Inc.*, 731 F.3d 146, 155 (2d Cir. 2013) (noting that

20

ERISA's fee provisions "'must be liberally construed to protect the statutory purpose of vindicating' employee benefit rights" (citation omitted)).

More to the present point, the Second Circuit has explained how the attorneys' fees provision in § 1132(g) vindicates these purposes:

> The central purpose of ERISA is to protect beneficiaries of employee benefit plans, *see, e.g.*, 29 U.S.C. § 1001(b); *Salovaara* v. *Eckert*, 222 F.3d 19, 31 (2d Cir. 2000), and "private actions by beneficiaries seeking in good faith to secure their rights under employee benefit plans are important mechanisms for furthering ERISA's remedial purpose," *id.* at 28 (internal quotation marks omitted). With exceptions not pertinent here, the statute provides that the court in an ERISA action "in its discretion may allow a reasonable attorney's fee and costs of action to either party," 29 U.S.C. § 1132(g)(1). Congress intended the fee provisions of ERISA to encourage beneficiaries to enforce their statutory rights. *See, e.g.*, *Seitzman* v. *Sun Life Assurance Co. of Canada, Inc.*, 311 F.3d 477, 486 (2d Cir. 2002)[.]

*Slupinski* v. *First Unum Life Ins. Co.*, 554 F.3d 38, 47 (2d Cir. 2009). Given that the Second Circuit has permitted attorneys for prevailing parties in analogous cases to recover attorneys' fees for preparing the fee application, *see, e.g.*, *Weyant* v. *Okst*, 198 F.3d 311 (2d Cir. 1999) (actions under 42 U.S.C. § 1983), the Court finds no basis to conclude otherwise here.[14]

---

[14]    *See Reed* v. *A.W. Lawrence & Co.*, 95 F.3d 1170, 1183-84 (2d Cir. 1996):

> [I]n *Gagne* v. *Maher*, 594 F.2d 336, 344 (2d Cir. 1979), *aff'd on other grounds*, 448 U.S. 122, 100 S. Ct. 2570, 65 L.Ed.2d 653 (1980), we held that attorneys' fees for the preparation of the fee application are compensable because "[i]f an attorney is required to expend time litigating his fee claim, yet may not be compensated for that time, the attorney's effective rate for all the hours expended on the case will be correspondingly decreased.... Such a result would not comport with the purpose behind most statutory fee authorizations, *viz*, the encouragement of attorneys to represent indigent clients and to act as private attorneys general in vindicating congressional policies." *Id.* (quoting *Prandini* v. *National Tea Co.*, 585 F.2d 47, 53 (3d Cir. 1978))[.]

The Court has reviewed the billing records for 2015, including those pertaining to the preparation of the instant application, in light of Plaintiff's concerns; having done so, it will not impose any incremental reductions. Accordingly, the Court will apply a 15% reduction to the 29.9 hours billed by attorneys Moss and Costello, yielding an adjusted figure of 25.415 hours at a rate of $385 per hour, and no reduction to the 9.4 hours billed by attorney Johnson, in light of his modest billing rate of $125 per hour. The Court will award fees for 2015 in the amount of $10,959.78, for a total attorneys' fees award of $162,336.00.

## C.      Calculating Costs of the Litigation

Defendants also seek to recover the costs of the litigation, and to this end have submitted substantiation for $1,242.73 in costs. (Moss Decl. Ex. D; *see also* Def. Fee Br. 10). Plaintiff has indicated that it does not oppose the costs sought by Defendant. (Pl. Fee Opp. 1). Accordingly, the Court will award costs in the amount of $1,242.73.

**CONCLUSION**

For the reasons stated herein, Defendants' motion for attorneys' fees and costs is GRANTED IN PART:  The Court will award attorneys' fees in the aggregate amount of $162,336.00, and costs in the amount of $1,242.73.  The Clerk of Court is directed to terminate Docket Entry 47.

In addition, on or before **March 4, 2016**, Defendants are ORDERED to file a current damages analysis, which shall set forth the amount of delinquent contributions for Plaintiff as of March 1, 2016.

SO ORDERED.

Dated:        February 24, 2016
              New York, New York

_____
        KATHERINE POLK FAILLA
        United States District Judge